Charles N. JOHNSON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 74–1122.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1974.

Decided Nov. 18, 1974.

Certiorari Denied March 17, 1975.

See 95 S.Ct. 1404.

See also, D.C., 350 F.Supp. 807.

Thomas M. Larson, Asst. Federal Public Defender, Kansas City, Mo., for appellant.

Donald R. Cooley, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and SMITH, Senior District Judge.*

GIBSON, Chief Judge.

The defendant, Charles Johnson, was convicted by a jury of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He received a seven year prison sentence to be followed by a mandatory additional

---

* The Honorable Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

three years special parole pursuant to § 841(b)(1).[1]

While pursuing his appellate remedies the defendant also sought 28 U.S.C. § 2255 relief, alleging that his trial counsel failed to provide him effective assistance of counsel prior to and during the trial. After an evidentiary hearing, the District Court denied relief.[2]

This appeal is from the two District Court orders, the judgment of conviction and sentence in October, 1972, and the denial of post-trial relief in June, 1973. Johnson asserts three primary assignments of error: (1) the improper giving of a joint possession instruction which assertedly negated Johnson's defense of entrapment, (2) search and seizure and evidentiary issues, and (3) the erroneous conclusion by the District Court that Johnson was adequately represented by counsel.[3] We affirm.

A brief review of the facts is in order. Twice on May 11, 1972, Government agents in Kansas City, Missouri, gave marked currency to Herbert Jones, a Government informant, for Jones to purchase narcotics from the defendant Johnson. After passing out of the range of surveillance by Government agents, Jones and Johnson consummated two transactions; Jones, in turn, surrendered the drugs to the Government agents. The next day, May 12, 1972, a special agent for the Federal Bureau of Narcotics and Dangerous Drugs (BNDD), upon information supplied by Jones, submitted an affidavit to the United States Magistrate and obtained a search warrant. Five officers executed the warrant at the apartment of defendant Johnson's sister where Johnson was living in Kansas City, Missouri. When they entered, the officers found Johnson sitting on one end of a couch close beside a TV tray on which lay a quantity of heroin. Informant Jones was seated on the far end of the couch. The officers also found a syringe lying on the floor and, after a subsequent search, the marked currency in the defendant's jacket. Both men were arrested and charged with possession with intent to distribute, but the case against Jones was dismissed by the Magistrate because the Government failed to show that Jones had sufficient control over the narcotics to constitute possession.

Defendant Johnson denied that he had met Jones on May 11 and claimed that Jones had sole possession of the bag of heroin and the syringe on May 12. At trial Jones testified that he twice bought heroin from Johnson in the same apartment on May 11, but that he gave Johnson no money the next day and, in fact, was surprised when the agents entered the apartment. Johnson testified at trial, claiming that Jones owned all the heroin and had brought it with him to the apartment on May 12. He explained that as an act of sympathy he offered Jones the apartment as a place to make use of the drug because Jones had complained he was ill.

## I. Jury Instruction on Joint Possession and Entrapment.

Johnson argues that the District Court should not have instructed the jury that it could find the defendant guilty if he possessed narcotics jointly with another person.[4] He reasons that, in view of the

---

1. The Honorable Elmo B. Hunter, United States District Judge, Western District of Missouri, entered judgment and sentence October 26, 1972.

2. The hearing was held March 7, 1973, and the District Court filed an unpublished Memorandum and Order denying relief June 11, 1973.

3. On this consolidated appeal the appellant is represented by the Federal Public Defender for the Western District of Missouri.

4. At the request of the Government and over the defendant's objection, the court instructed the jury in part as follows:

The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.

A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise

evidence, joint possession could only have been with Jones, whom, the jury was also instructed, was a Government informant. Because Jones was an informant it is argued that the Government failed to prove defendant Johnson's predisposition to commit the offense and to disprove that the crime was the creative effort of Government agents. Thus, the joint possession instruction "effectively negated" his entrapment defense.

■ First, we do not subscribe to Johnson's implicit premise that a finding of joint possession with a Government informant established prima facie entrapment. Nor do we agree that this case falls within the so-called "outrageous conduct" interpretation of the entrapment defense referred to by the Supreme Court as a bar to prosecution under the due process clause in United States v. Russell, 411 U.S. 423, 431, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). While Johnson may have made a sufficient showing in support of his entrapment argument to justify the court's submitting the issue to the jury, the evidence did not warrant a determination that entrapment existed as a matter of

law. United States v. Wilson, 501 F.2d 1080 (8th Cir. 1974); United States v. Pollard, 483 F.2d 929, 932 (8th Cir. 1973), cert. denied, 414 U.S. 1137, 94 S.Ct. 882, 38 L.Ed.2d 762 (1974); United States v. Emory, 468 F.2d 1017, 1018–1019 (8th Cir. 1972).[5]

■ Second, although there is generally no need for the court to give an instruction on possession in a case involving a possession issue, United States v. Robinson, 448 F.2d 715, 716 (8th Cir. 1971), cert. denied, 405 U.S. 927, 92 S.Ct. 977, 30 L.Ed.2d 800 (1972), the joint possession instruction was properly given in the instant case because the evidence raised a question as to who possessed the narcotics. Whether the instruction was properly given depends, of course, upon the facts of each individual case. The Government requested the instruction on constructive possession because the heroin was not found directly on the person of the defendant, but on a nearby TV tray. The instruction on joint possession was requested because the events took place in an apartment which Johnson shared with his sister as well as because Jones was pres-

---

dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

The law recognizes also that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

You may find that the element of possession as that term is used in these instructions is present if you find beyond reasonable doubt that the defendant had actual or constructive possession, either alone or jointly with others. * * *

See 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 13.10 (2d ed. 1970). At the defendant's request, the court also instructed the jury that Herbert Jones was an informant for the Government and that his testimony should be considered with greater care than the testimony of an ordinary witness. See 1 E. Devitt & C. Blackmar, *supra* § 12.02. Full instructions on the defense of entrapment were also given at defendant's request.

5. Indeed, the Government argues that, in view of the defendant's apparent denial that he committed any offense, Johnson should have been denied the defense of entrapment altogether and that, at worst, he was greatly assisted by the trial court's extensive jury instructions on entrapment. *See* Kibby v. United States, 372 F.2d 598, 601 (8th Cir.), cert. denied, 387 U.S. 931, 87 S.Ct. 2055, 18 L.Ed.2d 993 (1967).

Moreover, in spite of the District Court's instruction that Jones was an informant for the Government, the evidence supports the conclusion that he was not so serving on May 12. On May 11 he exchanged marked currency and provided information, but there was testimony that on May 12 he was "on his own" and "not on the job." When viewed most favorably to the Government, the evidence does not conclusively establish an agency relationship between Jones and the United States on May 12 so as to make the Government responsible for his actions. *See* United States v. Wilson, *supra*, 501 F.2d at 1081. However, whatever error there was in the court's instruction, if any, was in the defendant's favor. No prejudice could have resulted.

ent and had access to the drugs. Considering the jury charge as a whole, as we must, we find no error in the giving of the joint and constructive possession instructions in the circumstances of this case and no contradiction with the asserted entrapment defense that might confuse or mislead the jury.

## II. Search and Seizure; Other Crimes Evidence.

■■ Two points raised by the defendant do not require extensive discussion. First, he seeks to overturn the District Court's refusal to suppress evidence seized on May 12, 1972, because the affidavit requesting the search warrant did not establish probable cause and because the warrant was improperly executed by the arresting officers. Johnson's main contention is that the affiant who requested the search warrant improperly relied upon uncorroborated hearsay statements by the informant Jones to support his showing of probable cause before the issuing magistrate. The affidavit contained circumstantial explanation of how the informant obtained his information and it gave adequate reasons why the affiant believed Jones to be reliable. Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The informant's knowledge was gathered firsthand and the affiant certified that the Government had successfully used Jones' reliable information in the very recent past. Therefore, there was sufficient corroboration to justify issuance of the warrant. Spinelli v. United States, 393 U.S. 410, 415–416, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Probable cause is apparent. Moreover, the trial court's refusal to suppress on the grounds of assertedly defective execution of the warrant was supported by substantial evidence and will not be disturbed. Mullins v. United States, 487 F.2d 581, 589 (8th Cir. 1973); Gullett v. United States, 387 F.2d 307, 309 (8th Cir. 1967), cert. denied, 390 U.S. 1044, 88 S.Ct. 1645, 20 L.Ed.2d 307 (1968).

Second, relying again on his implicit premise that evidence of possession jointly with a Government informant establishes prima facie entrapment, Johnson argues that the court erred in admitting into evidence testimony concerning Johnson's prior criminal acts, namely sales of heroin on May 11, 1972. Specifically he asserts that although during the trial the District Court concluded that the prejudicial impact of the evidence of Johnson's prior dealings in narcotics outweighed its value to prove his intent to possess heroin on the date charged, as soon as the predisposition issue entered the case with Johnson's entrapment defense, the court admitted the same evidence of prior criminal acts which it otherwise would have excluded. If, however, the District Court, as Johnson claims, eliminated entrapment as a defense in the case, the scope of relevancy of a prior offense would have narrowed, and the evidence arguably should have been excluded because predisposition could no longer have been an issue.

■ The argument fails, however, as the court did not eliminate the entrapment defense. Evidence of prior distribution of heroin is admissible in a prosecution for possession under § 841 (a)(1) to prove the defendant's knowledge and intent to possess on the date charged. United States v. Richardson, 477 F.2d 1280, 1282 (8th Cir.), cert. denied, 414 U.S. 843, 94 S.Ct. 104, 38 L.Ed.2d 82 (1973); see Proposed Fed.R. Ev. 404(b) (1973). The court instructed the jury to use the evidence only for the limited purposes of judging Johnson's intent to possess on May 12 and to decide whether or not he had been entrapped.

■■ Rulings on the scope of relevancy and admissibility of other crimes in evidence are properly within the discretion of the trial court. Amos v. United States, 496 F.2d 1269, 1274 (8th Cir. 1974). See O'Reilly v. United States, 486 F.2d 208, 212 (8th Cir.), cert. denied, 414 U.S. 1043, 94 S.Ct. 546, 38 L.Ed.2d 332 (1973). We find no error in the court's admitting evidence

of Johnson's sales of heroin which took place one day before his arrest for the indicted offense of possession.

### III. Ineffective Assistance of Counsel.

In his § 2255 proceeding Johnson claims ineffective assistance of counsel. The District Court's denial of that claim is supported by the record in the plenary hearing on that issue. After reviewing the record, we conclude that the principles of law applied by the District Court in its June 11 Memorandum and Order were correct and have not been altered by this court's recent explications of the standards in McQueen v. Swenson, 498 F.2d 207 (8th Cir. 1974) and Garton v. Swenson, 497 F.2d 1137 (8th Cir. 1974).

Johnson's complaints center on counsel's failure to spend more time with Johnson both before and during trial. He claims counsel's unusually heavy caseload resulted in a failure to fully investigate and prepare for trial and to spend sufficient time and effort during trial to convince Johnson to refrain from testifying. Attorney Duncan, whose performance Johnson is attacking, did not enter the case until approximately two weeks before trial.[6] Duncan, however, had already begun his preliminary investigation by discussing the case with the defendant, with a local witness, and with the attorney he was replacing. Because of the change in representation by the lawyers in the case, the District Court inquired and received assurances just prior to trial that counsel for Johnson was fully prepared. After the hearing in 1973, the court found that Duncan had fully discussed the case with his client, both at the county jail and prior to trial, and that he had reviewed the case with prior counsel, thoroughly reviewed the Government's file, contacted witnesses suggested by Johnson, and used them where beneficial. The court concluded that Duncan "more than adequately" prepared for trial and very capably conducted the defense during trial.

The defendant bears a heavy burden of proving unfairness resulting from alleged ineffective assistance of counsel. The standard to be applied in assessing a claim of ineffective or inadequate representation is based on the particulars of each case and is not easily reduced to any formula or "to precise words capable of rigid application." Garton v. Swenson, *supra* 497 F.2d at 1140. Johnson's claim that his lawyer failed to carry out his ethical and legal responsibilities merely because the lawyer failed to convince his client to refrain from testifying borders on the ridiculous[7] and, even when combined with Johnson's other assertions, falls far short of meeting the ineffective assistance of counsel standard, however it might be phrased.[8] Trial tactics are often hard decisions made in the tempo of the adversary proceeding and, once made, are not subject to rejection in the event one misfires. In its hearing the District Court made a searching evaluation of possible constitutional violations in counsel's performance and found none. In so doing, the court properly applied the standard set out in Robinson v. United States, 448 F.2d 1255, 1256 (8th Cir. 1971), and found

---

6. Following return of the indictment in late May, 1972, Mr. Sokol, Assistant Federal Public Defender, was appointed to represent Johnson. Mr. Sokol was replaced by Mr. Shute because Johnson was dissatisfied. Finally, on October 2, 1972, Johnson privately retained Mr. Duncan and Mr. Shute withdrew.

7. Johnson was admittedly advised by counsel not to testify. The complaint here is that he was not *convinced* to stay off the stand. Interestingly, however, in response to the court's statement at the end of the trial that counsel had done a fine job, the defendant replied, "I am in 100% agreement with that, your Honor." Now, on appeal, Johnson relies heavily on counsel's candid response at the June, 1973, hearing when, asked if he would have handled the case differently with the benefit of hindsight, he responded that he would have "worked a little more on the defendant not to testify."

8. See the cases collected in Garton v. Swenson, *supra*, 497 F.2d at 1139–1140.

that counsel fully performed his duty to serve his client effectively.[9]

While our prior cases such as McQueen v. Swenson, *supra;* Garton v. Swenson, *supra,* and Robinson v. United States, *supra,* speak of denial of effective assistance of counsel or ineffective representation, and similar phrases, it appears to us that characterizing counsel's conduct on the basis of effectiveness may suggest a standard not supported by constitutional principles. The term "effective," in its most general application, describes something which ultimately achieves a desired result.[10] With reference to professional representation in criminal cases, that might be interpreted to mean achieving only outright acquittal of the defendant on the charges without regard to the weight and strength of the evidence adduced. A more appropriate nomenclature for the standard would be to test for the degree of competence prevailing among those licensed to practice before the bar. The standard would refer more precisely to the professional competence of one who has completed a long and arduous course of study for a professional license, and who has acquired some experience in applying legal principles and conducting court trials.

 The professional standard could be said to include the responsibility to insure that the client is tried according to the applicable rules of evidence and practice and to urge such arguments on a client's behalf as are indicated by the evidence, or lack of evidence, adduced. It is not, however, constitutionally limited to an "effective" type of representation that would achieve acquittal of a defendant on any charge regardless of the facts. The constitutional provision includes neither "effective" nor "adequate" nor other adjectival terms in its guarantee of assistance of counsel.[11] It merely states in plain language that "[i]n all criminal prosecutions, the accused shall enjoy the right to * * * have the Assistance of Counsel for his defence." U.S.Const. Amend. VI.

Johnson is apparently contending for a "heads, I win; tails, you lose" doctrine on the issue of adequate representation in criminal cases. It is easy in any proceeding, and particularly in a collateral proceeding, to attack what was done under the stress and strain of an adversary trial. In this case, if Johnson had not testified, his claim most certainly would now be "I wanted to testify; I wanted to tell the truth, but my lawyer wouldn't let me," or at least "my lawyer didn't convince me that I should have testified." His contention ultimately leads us down the corridor of dual criminal trials. In the event a first trial does not result in an acquittal, a second trial is held where defendant can employ different tactics, thus profiting from tactical mistakes of the first trial, all without regard for the principal issue of the accused's guilt.

---

9. In McQueen v. Swenson, *supra,* 498 F.2d at 214, we made it clear that we still adhere to the consistent standard applied in Cardarella v. United States, 375 F.2d 222, 230 (8th Cir.), cert. denied, 389 U.S. 882, 88 S.Ct. 129, 19 L.Ed.2d 176 (1967), and Brown v. Swenson, 487 F.2d 1236, 1240 (8th Cir.), cert. denied, 416 U.S. 944, 94 S.Ct. 1952, 40 L.Ed.2d 296 (1974), in spite of the fact that we have, at various times, expressed "the same thought in other words."

10. The term "effect" is equated with *result.* Black's Law Dictionary 605 (rev. 4th ed. 1968). The term "effectively" generally "emphasizes the actual production of an effect * * *." Webster's New International Dictionary 819 (2d ed. 1941). It describes things which are "producing or capable of producing a result." Webster's New Collegiate Dictionary 362 (1973).

11. The Supreme Court's use of the term "effective" in its statement that "the right to counsel is the right to the effective assistance of counsel," McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970), is carefully circumscribed for specific rather than generalized description. The Court's phrase should not be interpreted to require such representation as will result in acquittal, but only such as is "within the range of competence demanded of attorneys in criminal cases." *Id.* at 771, 90 S.Ct. at 1449.

Certainly such an incongruous result is not commanded by the Sixth Amendment guarantee of assistance of counsel. The trial court's order denying § 2255 relief is affirmed.

Judgment of conviction is affirmed and the order denying § 2255 relief is affirmed.