**UNITED STATES of America,
Appellee,**

v.

**Manuel Joseph VALENZUELA,
Appellant.**

No. 74-1668.

United States Court of Appeals,
Eighth Circuit.

Submitted May 15, 1975.

Decided July 24, 1975.

Rehearing Denied Aug. 28, 1975.

Kathleen M. Graham, Minneapolis, Minn., for appellant.

Elizabeth A. Egan, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before GIBSON, Chief Judge, and HEANEY and STEPHENSON, Circuit Judges.

GIBSON, Chief Judge.

Manuel Valenzuela appeals his jury conviction for knowing possession of property stolen from an interstate shipment of freight in violation of 18 U.S.C. § 659 (1970). The question presented on appeal, with several permutations, is whether he was denied his Sixth Amendment right to the assistance of counsel.

The facts underlying defendant's conviction are relatively uncomplicated. On April 8, 1974, two Suzuki motorcycles were reported stolen from the Lee Trucking Company in Minneapolis, Minnesota. That same day William Stavish, owner of a Mobil service station in Fridley, Minnesota, received a telephone call from an unidentified caller who inquired as to his interest in purchasing some motorcycles. Stavish was not interested but did ask a customer, Charles Kucera, the owner of Championship Cycles, Bethel, Minnesota, if he would be interested.

Kucera conversed with the caller and shortly thereafter two persons arrived at the station in a "kind of beige and off-white" ¾ ton Chevy pickup truck. Kucera at trial identified Valenzuela as the passenger in the truck with whom he conversed regarding purchase of the motorcycles. James Russell Harris, a codefendant also convicted but not appealing, was identified by Kucera as the driver of the truck. Harris was the owner of a beige and white GMC pickup truck at the time these events occurred. The two persons then left the station and returned with two crated, unassembled motorcycles in the bed of the pickup. Kucera purchased the motorcycles "as is" for $400 in cash.

Kucera then borrowed the pickup from the driver to drop the motorcycles off at his father's house nearby. He returned the truck to the station and left it as the two men were not there when he returned. Kucera later transported the motorcycles to the garage at the home of Kathleen Hockaday, where he also resided, in Harris, Minnesota. The next day, April 9th, Kucera was approached at his business establishment by two Minneapolis police lieutenants and an Isanti County sheriff and questioned regarding the two stolen Suzuki motorcycles. Kucera admitted purchasing them and went with the officers to the Hockaday home where both he and Hockaday gave their consent to a search of the garage where he had stored the motorcycles. During this search the officers determined that the motorcycles matched the description and serial numbers of those stolen from Lee Trucking Co. On April 11th, Lawrence Dick, an FBI agent called into the case because of the interstate nature of the shipment, went to the Hockaday home and with the written consent of Hockaday seized the motorcycles and removed them.

On May 24, 1974, a grand jury indictment charging Valenzuela and Harris with knowing possession of property stolen from an interstate shipment of freight was returned. Arraignment was July 3, 1974, before Magistrate J. Earl Cudd at Minneapolis, Minnesota, and trial upon the defendants' not guilty pleas was commenced July 22, 1974. This was a joint trial and both Harris and Valenzuela retained the same trial counsel.

This joint representation of codefendants by the same trial counsel is herein asserted to be violative of Valenzuela's Sixth Amendment right to the assistance of counsel due to an alleged conflict of interest between the defendants.

The seminal decision in this area is *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942), wherein the Supreme Court stated:

> [T]he "Assistance of Counsel" guaranteed by the Sixth Amendment contemplates that such assistance be untrammelled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests.

This court has expressed its concern over the possibility of a conflict of interest where one attorney is appointed to represent two or more codefendants and has cautioned that a trial judge should "conduct a careful inquiry and satisfy himself that no conflict of interest is likely to result and that the parties have no valid objection" before making such an appointment. *United States v. Williams,* 429 F.2d 158, 161 (8th Cir.), *cert. denied,* 400 U.S. 947, 91 S.Ct. 255, 27 L.Ed.2d 253 (1970). *See also United States v. Swanson,* 509 F.2d 1205, 1210 n.7 (8th Cir. 1975); ABA Standards, *The Function of the Trial Judge* § 3.4(b) (Approved Draft, 1972); ABA Standards, *The Defense Function* § 3.5(b) (Approved Draft, 1971). This same concern is present where retained counsel is involved, but the court's ability to forestall complaints emanating from dual representation is more restricted than when the court appoints counsel. *Glasser* dealt with court ordered appointments of counsel. Defendants are free to employ counsel of their choice, and courts have little leeway in interfering with that choice. *Cf. Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 44 L.Ed.2d 562 (1975).

■ It is established that joint representation of codefendants is not *per se* violative of the Sixth Amendment. *United States v. Williams, supra* at 160; *United States v. Youpee,* 419 F.2d 1340, 1345–46 (9th Cir. 1969). Moreover, there must be evidence of an actual conflict of interest or evidence pointing to a substantial possibility of a conflict of interest before error will be found in appointing one attorney to represent two or more codefendants. *Austin v. Erickson,* 477 F.2d 620, 623 (8th Cir. 1973). This same standard, absent a knowing and intelligent waiver, we believe should be applied to retained counsel,[1] subject to a defendant's constitutional right to employ counsel of his own choosing. *See Buffalo Chief v. South Dakota,* 425 F.2d 271, 279 (8th Cir. 1970); *Craig v. United States,* 217 F.2d 355, 359 (6th Cir. 1954).

We do not rest our decision herein upon a finding of a waiver. The record before the Magistrate is unavailable. Although the Assistant United States Attorney has represented that the problem of joint representation was called to defendants' attention at arraignment and that neither defendant wished their retained counsel to withdraw, and we feel sure that this is the standard practice, we cannot determine from this limited record that there was a knowing and intelligent waiver by Valenzuela of his Sixth Amendment right. *Compare United States v. Swanson, supra* at 1210 n.7; *Buffalo Chief v. South Dakota, supra* at 280.

■ We are satisfied that there was no actual conflict of interest or the substantial possibility of one before trial commenced. The codefendants relied upon alibi defenses and there was no indication that their defenses might be inconsistent. A finding of reversible error thus hinges on whether an actual conflict of interest arose during trial.

---

1. Although counsel has a responsibility to avoid conflicts of interests arising from multiple representation, ABA Code of Professional Responsibility DR 5–105, we are aware of no decision that would deprive a defendant of his choice of retained counsel in a situation presenting a problem of conflicting interests when the defendant knowingly and intelligently affirms his choice. *Cf. Buffalo Chief v. South Dakota,* 425 F.2d 271, 276 (8th Cir. 1970).

*See Austin v. Erickson,* 477 F.2d 620, 623 (8th Cir. 1973); *cf. Buffalo Chief v. South Dakota, supra* at 280. Our review of the record convinces us that nothing at trial establishes an actual conflict of interest in the representation of the two codefendants.

Defendant's strongest assertion of an actual conflict concerns the testimony of Lyle Webster, an employee of Lee Trucking Co., as to a statement made by Harris. Webster testified that some 3 or 4 days prior to the burglary he had a conversation with Harris in a bar during which Harris asked if he would like to get rid of a load of motorcycles. Webster also testified that Valenzuela was present in the bar but not a party to that part of the conversation with Harris. Harris took the witness stand in his own defense and denied the statement. Valenzuela argues that a conflict of interest arose because Harris' statement implicated Valenzuela and his counsel could not expose Harris to full and effective cross-examination.

Defendant relies upon *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1967), and *Baker v. Wainwright,* 422 F.2d 145 (5th Cir. 1970). *Bruton* established that the admission of a confession against a codefendant which implicates another defendant is reversible error when the codefendant does not take the stand so as to be subject to cross-examination. In *Baker* codefendants were represented by the same counsel. The State introduced a confession of one defendant implicating the other. The court found a self-evident conflict of interest between the codefendants because counsel could have voided the proceedings against the non-confessing defendant under the *Bruton* rationale if the confessing defendant had not taken the stand.

We think both these cases are inapposite to the present case. First, it requires a long stretch of the imagination to find that Harris' statement to Web-

ster was a confession. Additionally, it was Webster's testimony regarding Valenzuela's presence in the bar and not Harris' statement which indirectly implicated Valenzuela. Had Harris not taken the stand we do not believe the proceedings against Valenzuela would be considered defective under the *Bruton* rationale as Harris' statement was not inculpatory as to Valenzuela. Second, should Harris' statement be considered a confession implicating Valenzuela, *Nelson v. O'Neil,* 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971), requires a rejection of this argument. Harris took the witness stand and denied making the statement. In *O'Neil* the Supreme Court concluded that:

> [W]here a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth Amendments.

*Nelson v. O'Neil, supra* at 629–30, 91 S.Ct. at 1727.

■ In addition to the assertions of a conflict of interest which we have rejected, Valenzuela attacks the competence of his trial counsel. Defendant has a "heavy burden of proving unfairness resulting from alleged ineffective assistance of counsel." *Johnson v. United States,* 506 F.2d 640, 645 (8th Cir. 1974). His attack is centered upon counsel's actual conduct of the trial, conduct which with the benefit of hindsight we can well agree might have or should have been different. However, as we have often noted, a "wrong or poorly advised decision by a defense attorney is not alone enough to support a subsequent claim of ineffective counsel." *United States v. Hager,* 505 F.2d 737, 739 (8th Cir. 1974); *accord, Robinson v. United States,* 448 F.2d 1255, 1256 (8th Cir. 1971).

We think it important to note that the real question in the case was the identity of the persons who sold Kucera the motorcycles. There is no question but that two motorcycles were stolen from an interstate shipment of freight, obtained by Kucera, and recovered by the authorities. Harris and Valenzuela said they did not sell the motorcycles to Kucera, had never been in Stavish's Mobil Station and were elsewhere at the time of the crime. Kucera testified that it was the defendants who sold him the motorcycles. It is not necessarily a reflection upon the competence of trial counsel when the jury chooses to believe the Government's witnesses and not the defendants.

■ While we have considered all of defendant's contentions regarding the alleged ineffective assistance of counsel, we discuss only two of the more serious contentions. First, counsel's failure to object to Webster's testimony indirectly implicating Valenzuela or to request a cautionary instruction limiting its admissibility only to Harris is attacked. We would agree that a cautionary instruction would have been proper. However, Webster did testify that Valenzuela was not within hearing distance and did not participate in the conversation regarding the motorcycles. Harris denied making the statement. Given such circumstances, we cannot say that the failure to object to the testimony or to request a cautionary instruction created such basic unfairness, when considered in light of the whole record, as to indicate a denial of the assistance of counsel.

■ Additionally, the courtroom identification of Harris and Valenzuela is challenged. Defendant argues that without any development, the prosecutor asked him to stand and then in effect asked Kucera if he was the culprit. Our reading of the transcript reveals otherwise. Kucera had testified as to his first seeing the motorcycles in the back of a pickup truck at Stavish's Mobil Station. He was asked who was present at that time and answered, "Well, there was just me and them two people right back there." After Kucera testified that he did not know their names at that time, the prosecutor had each defendant in turn rise and asked Kucera, "Is this one of the people you are now stating was present when you first saw these two motorcycles?" The defendants had already been identified by Kucera and this subsequent identification was clearly for the purpose of indicating which persons were "them two people right back there." We find nothing leading or impermissibly suggestive in this exchange calling for objection by defense counsel.

While hindsight after an unsuccessful defense inevitably raises some doubt as to the trial tactics employed, and we do not wish to indicate by rejection of this claim of error that Valenzuela's counsel may not have made some judgments which were wrong and poorly advised, we do not find "such conscious conduct as to render pretextual an attorney's legal obligation to fairly represent the defendant." *Robinson v. United States, supra* at 1256. As a matter of fact, defense counsel was confronted with a strong case against each defendant and did a respectable job of testing the identification of the truck involved in transporting the stolen motorcycles and in the identification of the defendants as participants in the criminal act charged in the indictment. There was little else she could do. There was no basis for challenging the consented-to search of the Hockaday and Kucera residence for the stolen motorcycles. As stated in *Lutwak v. United States,* 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953), "A defendant is entitled to a fair trial, but not a perfect one." We are satisfied that defendant herein received a fair trial.

Judgment of conviction affirmed.

HEANEY, Circuit Judge (dissenting).
I respectfully dissent. The appellant was not afforded the effective assistance

of counsel. The standard described by the word "effective" does not, of course, require a type of representation capable of achieving acquittals regardless of the facts. *Johnson v. United States,* 506 F.2d 640, 646 (8th Cir. 1974) (dictum), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1404, 43 L.Ed.2d 659 (1975). But neither does the standard countenance a failure of professional responsibility when the evidence of guilt, as shown by the record made, is strong. *Cf. McQueen v. Swenson,* 498 F.2d 207, 214 n.10 (8th Cir. 1974). The standard applied in this Circuit, the "mockery of justice" standard, is not to be taken literally. *Id.* at 214. Rather, a searching analysis of the facts of each case is required to evaluate the possible constitutional violation, with the appellant bearing the heavy burden of proving unfairness. *Id. Accord, United States v. Hager,* 505 F.2d 737, 379 (8th Cir. 1974); *Garton v. Swenson,* 497 F.2d 1137, 1139 (8th Cir. 1974). The appellant has met that burden here.[1]

Ignored by the majority is the defense counsel's utter lack of pretrial investigation. Faced with an alibi defense, counsel made no effort to find evidence corroborative of the appellant's testimony, and none was introduced. Indicative of this lack of diligence was counsel's failure to file motions for discovery and inspection until the day before trial. This failure to make a reasonable pretrial investigation is, itself, ineffective assistance of counsel. *See McQueen v. Swenson, supra.*

But perhaps more damaging to the appellant was the defense counsel's failure to move before trial to suppress the identification testimony of Kucera: testimony that could have been impermissibly influenced by previous photographic viewing of the defendant. Instead, counsel chose to attack Kucera's testimony in open court before the jury and supported, rather than detracted from, the government's case. In my view, such procedure does not evidence a "respectable job of testing * * * the identification of the defendants as participants in the criminal act charged in the indictment." *Supra* at 418. Rather, it shows an abdication of professional judgment which resulted from ignorance of the government's case. No justification can be offered to support this "tactical" decision of the defense counsel. *See McQueen v. Swenson, supra* at 216.

Finally, the record shows the defense counsel's total failure to effectively cross-examine the government witnesses and to object to improper testimony. Especially telling is the failure to request a limiting instruction of Webster's testimony indirectly implicating the appellant in the crime. Such a request should have been anticipated, for Webster's statement was made available to the defense before trial.

Considering the appellant's assignment of constitutional error in light of the entire record, I would find that he had been denied his right to the effective assistance of counsel and would reverse the conviction.

---

1. While not dispositive of this appeal, the representation of both of the defendants is reflective of the defense counsel's insensitivity to the best interests of Valenzuela.

 * * * Although there may be some situations where it will be mutually advantageous to the defendants to have a single lawyer represent them, the risk of an unforeseen and even unforeseeable conflict of interest developing is so great that a lawyer should decline multiple representation unless there is no other way in which adequate representation can be provided to the defendants. ABA Standards, *The Defense Function,* § 3.5 at 214 (Approved Draft, 1971).