Denver WITHAM, Appellant,

v.

James MABRY, Commissioner, Arkansas Department of Correction, Appellee.

No. 78–1474.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1978.
Decided March 29, 1979.

---

10.   *See* note 7, *supra*.

Stephen C. Engstrom, Little Rock, Ark.,
argued, for appellant.

Jesse L. Kearney, Asst. Atty. Gen., Little Rock, Ark. (argued) and Bill Clinton, Atty. Gen., Little Rock, Ark., on brief, for appellee.

Before HEANEY, ROSS and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Petitioner Denver Witham appeals from the district court's judgment dismissing his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. For reversal Witham argues that the district court erred in ruling that certain affidavits and testimony he sought to introduce were inadmissible hearsay, and in ruling against his claim that he was denied effective assistance of counsel at his trial in the Arkansas state court. For the following reasons, we affirm the district court.[1]

On October 18, 1974, a jury found petitioner guilty of first degree murder. At trial the evidence was that Tommy Stanley Wells, a young man in his twenties, was last seen alive on March 12, 1974, at approximately 1:30 a. m. when he left the Texas Lounge in Little Rock, Arkansas, with Denver Witham and Denver's cousin, Johnnie Witham, in Denver's automobile. About 8 a. m. on the same morning, Wells's body was discovered lying on the side of the road. Wells had been bludgeoned to death and was not recognizable.

Both Johnnie and Denver were indicted for the murder of Wells. Johnnie Witham's trial before Circuit Judge Henry B. Means in Saline County, Arkansas, ended on October 7, 1974. Denver Witham was tried in the same courtroom, before Judge Means, from October 11 through 17, 1974. Both were convicted of first degree murder and given life sentences.

Petitioner's defense at trial was that he was so drunk when the Texas Lounge

closed in the early morning of March 12 that he crawled into the back seat of his car and passed out. He does not recall who was in the car, who drove or any events which occurred before 4:00 a. m. when he was awakened by his mother and sister from the back seat of his car, which was now at his house.

Denver's mother, Mrs. Gladys Witham, and his sister, Ms. Joyce Teague, corroborated his story. Mrs. Witham testified that she was awakened at approximately 4:00 a. m. on March 12 by a banging at the back door. When she opened it she saw her nephew, Johnnie Witham, who was covered with blood. He stated he had been in a fight and went to the bathroom to change clothes. Mrs. Witham found Denver in the back seat of Denver's car which was parked in back of the house. She enlisted the help of her daughter to move Denver, who had "passed out," into the house. Both Mrs. Witham and Ms. Teague stated that Denver had no blood on him.

Linda Clark, Denver's then estranged girlfriend, was spending the night of March 11 at the Witham household[2] and her rendition of the night's activities contradicted that of Mrs. Witham and Ms. Teague. According to Mrs. Clark, at 2:30 a. m. both Denver and Johnnie came running into the Witham house. Denver was crying and told his mother, "[y]ou all have got to help us"; "We have really done it this time"; and "We have killed a man. We beat him to death." Denver then told Johnnie to get the pipe out of the car and "drive it in the ground close to the drainage ditch so no one would find it." Mrs. Clark also stated that Johnnie's clothes were soaked with blood but, according to her, Denver too had blood on him—there was one spot on his shirt and some in his hair, which she washed out.

After his conviction, Denver Witham pursued state remedies for two years to no

1. The Honorable Oren Harris, United States Senior District Judge for the Eastern District of Arkansas.

2. Linda Clark "went with" Denver Witham off and on for about one year in 1971 and 1972, during which time she claims to have had a child by him. Although she and Denver no longer dated by March 11, 1974, and apparently were not on particularly good terms, she was staying at the Witham house overnight so Mrs. Witham could see her grandchild.

avail.[3]  On April 22, 1976, Witham submitted a petition for habeas corpus pursuant to 28 U.S.C. § 2254 to the district court; this petition was amended one year later. On November 17, 1977, the district court held an extensive hearing at which appellant called as witnesses Johnnie Witham, who refused to testify on the grounds of self-incrimination; Linda Clark; two of his fellow prisoners at Cummins Unit; and his aunt who supposedly received some revealing information from Linda Clark. The respondent called one witness—petitioner's trial counsel Kenneth Cofflet. The district court found against petitioner on all issues and denied his request for a certificate of probable cause to appeal to this court. We granted certificate of probable cause and appointed counsel to represent petitioner on appeal.

On appeal counsel for petitioner raised only some of the issues which were raised before the district court. We can find no indication that these issues have been waived and so out of concern for fairness to petitioner, we will consider *sua sponte* all issues which were raised at the § 2254 hearing below.

At this hearing, just as at the two hearings held in the Arkansas court after petitioner's conviction, Johnnie Witham was called as a witness by the petitioner and as he had done previously, invoked the fifth amendment and refused to testify. Johnnie Witham's testimony is crucial to substantiate petitioner's claim before the district court that Saline County officials conspired to prevent Johnnie from testifying and thereby exculpating petitioner.

When Johnnie invoked the fifth amendment, petitioner attempted to introduce the affidavits of two inmates at the Cummins Unit of the Arkansas State Penitentiary. One of these individuals was Johnnie Witham's cellmate for three to four months; the other was a "writ writer" who Denver had solicited to help with his post-conviction petitions. Essentially, these men testified that Johnnie told them Denver had nothing to do with the killing but that Johnnie had been promised by the "Prosecuting Attorney and his [Johnnie's] lawyer" that his life sentence would be reduced to five years if he did not testify for Denver.

The district court ruled that the statements by these inmates were inadmissible hearsay. Petitioner challenges this ruling on appeal arguing that the statements are admissible as an exception to the hearsay rule, specifically the "against penal interest" exception. This exception is based upon the "circumstantial probability of trustworthiness," that is, "the circumstance that the fact stated, being against the declarant's interest, is not likely to have been stated untruthfully." 5 *Wigmore, Evidence* § 1455 (Chadbourn rev. 1974). The party seeking to admit statements under this exception must prove (1) the declarant is unavailable, and (2) the statements are against the declarant's penal interest.[4] *Fed.R.Evid.* 804(a)(1) and 804(b)(3). Although we agree with petitioner that John-

---

3. On November 13, 1974, Witham submitted a motion for a new trial alleging discovery of new evidence. On November 20, 1974, Judge Means of the Circuit Court in Saline County (the same judge who presided at Witham's trial) held a hearing on this motion and, after hearing all of the evidence, denied the motion. Witham appealed his conviction directly and on September 22, 1975, it was affirmed by the Arkansas Supreme Court. *Witham v. State,* 258 Ark. 541, 527 S.W.2d 905 (1975). Witham then submitted a motion for post-conviction relief. Judge Means held a hearing on this motion on November 26, 1975, and denied petitioner's request. The Arkansas Supreme Court affirmed on February 27, 1976. *Witham v. State,* per curiam, No. CR–75–65 (Nov. 15, 1977). Witham submitted his first habeas corpus petition to the district court two months later on April 22, 1976, and his amended petition on April 11, 1977.

4. Rule 804(b)(3) also requires that "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Appellant attempted to argue that there were such "corroborating circumstances" here. We do not attempt to assess the viability of these proffered "corroborating circumstances" because, as will be discussed *infra,* we do not find that the statements at issue expose Johnnie to criminal liability.

nie is unavailable as required by the rule, we cannot agree that these statements are against his penal interest.

■ The Federal Rules of Evidence state that " 'Unavailability as a witness' includes situations in which the declarant . . . is exempted by ruling of the court on the ground of privilege from testifying . . ." Fed.R.Evid. 804(a)(1). This circuit has made clear that the above definition includes the situation where the witness invokes the fifth amendment privilege against self-incrimination. *See, e. g., United States v. Pelton*, 578 F.2d 701, 709–710 (8th Cir. 1978); *United States v. Rogers*, 549 F.2d 490, 498 n.8 (8th Cir. 1976); *see also* 5 *Wigmore, Evidence, supra*, § 1456 n.6. Therefore, because Johnnie Witham was allowed to assert his fifth amendment right not to testify, he is, as petitioner claims, unavailable within Rule 804(a)(1).

The next element, whether the statements Johnnie made to his fellow inmates are against his penal interest, is complicated by the fact that Johnnie has already been convicted. At least one court has held that statements cannot be against one's penal interest if prosecution is not still possible. *United States v. Marquez*, 462 F.2d 893, 895 (2d Cir. 1972), *citing United States v. Dovico*, 380 F.2d 325, 327 (2d Cir.), *cert. denied*, 389 U.S. 944, 88 S.Ct. 308, 19 L.Ed.2d 302 (1967).

■■ This circuit has not adopted such a rigid rule. Instead, we attempt to look at the practical significance of statements made by a witness, even one already charged with a crime, and determine, given all of the circumstances, if the statements are against that witness's penal interest. *See, e. g., United States v. Love*, 592 F.2d 1022 (8th Cir. 1979); *United States v. Lilley*, 581 F.2d 182, 187–188 (8th Cir. 1978); *United States v. Rogers, supra*, 549 F.2d at 498 n.8.[5] In the case before us, therefore, we do not hold that statements by Johnnie cannot be against his penal interest merely because he has already been convicted. Rather, we must inquire into the practical effect of Johnnie's statements and determine if from what petitioner has shown this court, the statements are against Johnnie's penal interest.

■ Petitioner has not articulated how these statements are against Johnnie's penal interest but Johnnie's court-appointed counsel has argued that any statements Johnnie makes could affect his post-conviction relief possibilities. Because we can find no other basis for petitioner's theory that these statements are against Johnnie's penal interest, we shall assume this is his theory also. In assessing whether the effect on Johnnie's post-conviction remedies is sufficient to qualify the statements as being against Johnnie's penal interest, we must bear in mind that petitioner has the burden of proving all elements of the ex-

5. In *Love, Lilley* and *Rogers, supra*, the witnesses who were allegedly giving testimony against their penal interest had already been charged or convicted of crimes. In these cases we did not automatically rule out the possibility that the statements of the witnesses were against their penal interest on the ground the witnesses had already been charged or convicted of crimes. Instead we attempted to look at the particular situations and determine if the statements of these witnesses could still be against their penal interest. In *United States v. Love, supra*, the witness had been charged with prostitution but the charges were disposed of before trial when she was allowed to post, and then forfeit, bond. Thus, according to *United States v. Dovico, supra*, which required that prosecution still be possible, her statements could not be against her penal interest. We did not end our inquiry with *Dovico*, however, but continued to ascertain if, because of juvenile proceedings pending in another jurisdiction, the witness's statements could still be construed as being against her penal interest. In *United States v. Lilley, supra*, we found that the statements of the witness, who had already been charged with a crime, were only partially against his penal interest and thus only that portion of his testimony was admissible. In *United States v. Rogers, supra*, we noted that the witness, who had already been convicted but not yet sentenced, and who admitted guilt to a related crime, could be giving testimony against his penal interest. We also noted, however, that he might be trying to curry the prosecutor's favor so as to obtain a lighter sentence for the crime he had already pled guilty to and thus, the statements may not, in the long run, have been against his penal interest.

ception to the hearsay rule that he seeks to invoke. *United States v. Pelton, supra,* 578 F.2d at 709 (and cases cited therein). Although there is some evidence that Johnnie, at least at one time, was pursuing some type of post-conviction relief, petitioner has not put forth any evidence as to what type of relief Johnnie is seeking or on what basis he is proceeding. If in fact Johnnie is still seeking post-conviction relief five years after his conviction, it is entirely possible that Johnnie's petition is based upon a procedural ground and thus independent of any factual finding that he actually committed the murder. In other words, even if Johnnie is seeking post-conviction relief, it is not clear that his statements that he, not Denver, committed the murder would adversely affect his post-conviction chances. Therefore we cannot agree that petitioner has proven these statements to be against Johnnie's penal interest. Because this is an essential element to qualify these statements as an exception to the hearsay rule, we affirm the district court's ruling that these statements are inadmissible hearsay.

■ Petitioner's second allegation of error is that he was denied due process because he had ineffective assistance of counsel at trial. Petitioner "bears a heavy burden of proving unfairness resulting from alleged ineffective assistance of counsel." *Johnson v. United States,* 506 F.2d 640, 645 (8th Cir. 1974); *see United States v. Kelton,* 518 F.2d 531, 534 (8th Cir. 1975). "In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that he was prejudiced thereby." *United States v. Hood,* 593 F.2d 293 (8th Cir. 1979); *Benson v. United States,* 552 F.2d 223, 224 (8th Cir.), *cert. denied,* 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 120 (1977).

■ On appeal Witham argues that his trial counsel, Kenneth Cofflet, was ineffective because he failed to seek a change of venue or request a continuance. Witham also argues that Cofflet was ill-prepared because he failed to attend Johnnie's trial.

Johnnie Witham's trial was held ten days before petitioner's trial, in the same courtroom and before the same judge. *True Detective,* a national magazine which sold in Saline County as in other places across the country one month before the two trials, devoted seven pages to Wells's murder and concluded that Johnnie and Denver Witham were to blame. Petitioner argues that because of the proximity of Johnnie's trial to his own and the inflammatory article in *True Detective,* he could not get a fair trial in Saline County. While these facts trouble us and raise some question about the impartiality of the locale where petitioner was tried, we cannot say that Cofflet failed to "exercise customary skill and diligence" in not seeking a change of venue or continuance. Because *True Detective* is a national magazine, a change of venue would not alleviate its prejudicial impact. Cofflet testified that although Johnnie had just been tried for the same offense as his client, he made a tactical decision that because he had been practicing law in Saline County for twenty years, was well known in the county, and had experienced relative success in obtaining acquittals there, the disadvantages of holding appellant's trial in Saline County were outweighed by the advantages. This is an exercise of judgment which will not be second-guessed by this court. *Cf. McQueen v. Swenson,* 498 F.2d 207, 216 (8th Cir. 1974); *Robinson v. United States,* 448 F.2d 1255, 1256 (8th Cir. 1971). It was also an exercise of judgment to hold petitioner's trial immediately after Johnnie's trial instead of seeking a continuance. Because his client's defense implied that Johnnie murdered Wells, Cofflet may well have assumed that his client would be better off if his trial was soon after Johnnie had been convicted of the murder. At any rate, petitioner has not even attempted to explain how he was prejudiced by the failure to seek a continuance, and because he bears a heavy burden of proof on this issue, *United States v. Kelton, supra,* 518 F.2d at 534; *Johnson v. United States, supra,* 506 F.2d at 645, we reject his claim.

We also disagree with petitioner that Cofflet was ill-prepared because he failed to attend Johnnie's trial. Although the same crime was involved, petitioner has not even intimated how the trial of his case was hindered by Cofflet's failure to attend Johnnie's trial. It was not an unreasonable decision for Cofflet to determine that his time (for which his client, Denver Witham, was paying) was better spent preparing for his client's case in some manner other than sitting through days of testimony. Petitioner has clearly not met the heavy burden of proof he must shoulder to substantiate his claim of ineffective assistance of counsel. *United States v. Kelton, supra,* 518 F.2d at 534; *Johnson v. United States, supra,* 506 F.2d at 645.

In conclusion, we find that petitioner did not receive ineffective assistance of counsel and affirm the district court on this issue also.

The above are the only issues petitioner raised on appeal, but, as we stated earlier, other issues involving serious allegations were raised at the district court. Because of the confusion at oral argument as to whether these issues were waived[6] and because of their serious nature, we have reviewed all records in this case and will consider these issues sua sponte.[7]

Petitioner's claim that various Saline County officials promised Johnnie Witham a reduction of his sentence from life to five years if he would not testify in petitioner's behalf is especially troublesome. We cannot, however, find anything in the record which even remotely supports this assertion. The only evidence of such a conspiracy is petitioner's claim of statements Johnnie has made, and for the past five years Johnnie has invoked the fifth amend-

6. At oral argument petitioner's counsel first stated that the issues raised at the district court and not pursued on appeal were "waived in open court." We can find no indication in the transcript of the proceedings at the district court that these issues were waived, nor were they waived in this court. Later, after questioning by this court, petitioner's counsel admitted, "there is a critical issue to be decided and that is . . . whether the petitioner voluntarily relinquished pursuit of his other grounds in the petition." It appears to us, therefore, that there is a serious question whether these issues were ever waived.

7. One serious problem discussed at oral argument was whether the issues raised before the district court had been presented to the state court. If they had not and could still be presented, petitioner has failed to meet the requirement in 28 U.S.C. § 2254(b) that all state remedies be exhausted before filing a petition for habeas corpus relief. While we do not believe petitioner raised the identical claims to the state court as he raised in his habeas corpus petition, we also believe that petitioner is precluded by Arkansas law from presenting these new issues in a second state post-conviction petition. Therefore, practically speaking, petitioner has exhausted his state remedies within the meaning of 28 U.S.C. § 2254.

In his motion for a new trial, his Rule One Motion for Post-Conviction Relief (now Rule 37) and the direct appeal of his conviction, petitioner merely alleged that the prosecution, which had subpoenaed Johnnie in petitioner's trial, decided not to call Johnnie to the stand because he would testify that petitioner had

nothing to do with the murder. In his habeas corpus petition to the district court the petitioner embellished the above claim so that he was now alleging that certain Saline County officials had offered to reduce Johnnie's life sentence to five years if he would not testify in Denver's behalf at Denver's post-conviction hearings. In addition, there were new assertions: Saline County officials threatened Linda Clark into testifying against petitioner and petitioner's trial counsel was ineffective because, among other things, he solicited $300.00 from petitioner to bribe a juror. We can find no indication in any of the state proceedings that these specific allegations were considered by the Arkansas courts.

Under these circumstances, we would normally be compelled to dismiss Witham's petition so that the Arkansas courts could consider these new claims. However, under Arkansas law state prisoners are precluded from filing a second post-conviction petition whether or not they are alleging new grounds of error. Crim. Proc.Rule 37.2, 4A *Ark.Stat.Ann.* (1977) (supersedes Crim.Proc.Rule 1(H), 3A *Ark.Stat.Ann.* (Supp.1969)); *Pruitt v. Hutto,* 550 F.2d 1093, 1094 (8th Cir. 1977); *Winberry v. State,* 256 Ark. 65, 505 S.W.2d 497, 498 (1974). Therefore, although we find that petitioner did not raise his current claims of error before the state court, because of the Arkansas policy against second post-conviction petitions, we are not compelled to dismiss federal jurisdiction and defer to the Arkansas courts by giving them the initial opportunity to rule upon petitioner's claims.

**300**

ment and refused to testify at petitioner's various state and federal post-conviction proceedings. Furthermore, the statements of inmates at the Cummins Unit as to what Johnnie told them about such a conspiracy are, as we have determined, inadmissible hearsay. Although Johnnie was supposed to receive the commutation of his sentence within one year after trial, at the time of this appeal—five years later, he is still serving a life sentence. Thus, there is no evidence which supports this claim of petitioner's.

■ Witham's next claim at trial was that Saline County officials threatened Linda Clark with prosecution as an accessory after the fact if she did not testify against Witham at trial. In his habeas corpus hearing before the district court, petitioner called Linda Clark as his witness. She firmly denied that her testimony was the result of threats. When petitioner's own witness rebuts his claim of coercion we have no choice but to disregard it.

■ Petitioner also argued before the district court that his trial attorney, Kenneth Cofflet, was ineffective in that he solicited $300 from petitioner for the purpose of bribing a juror. Petitioner's own testimony was the only evidence he presented to substantiate the above charge. The allegation was steadfastly denied by Mr. Cofflet who documented the various amounts he received from the Withams as his fee. While recognizing that attempts at bribery are by nature covert and difficult to prove, we cannot say that the district court erred in accepting Cofflet's testimony over that of petitioner. We therefore reject all of petitioner's claims raised before the district court.

For the foregoing reasons, the judgment of the district court is affirmed.