UNITED STATES of America, Appellee,

v.

Anna Erna LAWRIW, Appellant.

No. 77–1409.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 31, 1977.

Decided Dec. 30, 1977.

---

**99**

Court[1] in the case now before us on appeal, and we are satisfied that it accomplished the purposes to be served by such inquiry and that appellant did, as the District Court found, knowingly and intelligently waive her right to separate counsel. Since this is the only issue before us, we affirm the District Court's denial of post-conviction relief.

### I.

Appellant Anna Lawriw was convicted in a joint trial with Terrance Richard Noto of unlawful possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).[2] The case was tried to the District Court without a jury on stipulated facts. The purpose of this procedure was to preserve for appellate review the denial of a pretrial motion to suppress evidence seized following a warrantless search of the motel where Lawriw and Noto were staying at the time of their arrest. On appeal we rejected the search and seizure contention and affirmed the conviction in an unpublished opinion. *United States v. Noto,* 558 F.2d 1035 (8th Cir. 1977). Thereafter, Lawriw filed a motion for a new trial on the ground of newly discovered evidence, *see* Fed.R.Crim.P. 33, contending that she had an independent defense that she was precluded from raising by reason of the dual representation, and hence was denied her Sixth Amendment right to effective assistance of counsel. Following a hearing, the District Court held that there was no conflict of interest making the assistance of counsel ineffective, and if there was, that Lawriw had waived this right. Her motion was denied, and this appeal followed.

Appellant's arrest occurred on April 8, 1976, when federal drug agents entered the motel room occupied by Lawriw and Noto in Hennepin County, Minnesota, and seized approximately one pound of cocaine in a flight bag also containing both male and female toiletries and a prescription vial in the name of Lawriw. As revealed by the

Marc G. Kurzman, St. Paul, Minn., argued and on brief, for appellant.

John M. Lee, Asst. U. S. Atty. (argued), and Andrew W. Danielson, U. S. Atty., Minneapolis, Minn., on brief, for appellee.

Before GIBSON, Chief Judge, HEANEY and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Once again we are called upon to review a post-conviction claim that a defendant in a criminal trial, jointly represented with a codefendant by a single attorney, was denied effective assistance of counsel. Consistent with our earlier decisions in which we have identified the pitfalls of this practice, we announce today an affirmative duty of inquiry by the district court. Such an inquiry was conducted by the District

1. The Honorable Miles W. Lord, United States District Court for the District of Minnesota.

2. Appellant was sentenced to five years imprisonment and an additional three years of special parole.

stipulation of facts, Lawriw was seated on a bed, adjacent to which was a suitcase containing $5,700 in cash. $3100 of that amount was money paid the previous evening by federal agents to obtain two ounces of cocaine from associates of Lawriw. Documentation and correspondence, all addressed to Lawriw, were also found in the suitcase.

In this appeal appellant contends that dual representation at her joint trial deprived her of the opportunity to assert that she lacked knowledge of the presence of the cocaine in the room, and hence she could not have been guilty of possession with intent to distribute.

At the commencement of the trial the District Court and defense counsel questioned both defendants regarding their awareness of the possibility of conflict, and the record reveals that both defendants had discussed this possibility with their retained counsel and still desired him to represent them jointly. In their presence, and without challenge, their attorney, Joseph S. Friedberg, represented to the Court that he had discussed the possibility that one defendant might seek to place the blame on the other and that neither party wanted to do this.

The point presented on this appeal first surfaced when the District Court asked appellant to read the stipulation of facts into the record. When appellant appeared to be taking issue with some of the stipulated facts during the reading, the District Court ordered her placed under oath and examined her as to the facts stipulated.

■ The following colloquy is illustrative. Appellant had questioned the stipulation that there was a pound of cocaine in the room. The court examined her on this point.

[COURT:] Was there a pound of cocaine in that room before the agents came in there?

A. I didn't know that there was a pound of cocaine in the room before the agents came in.

THE COURT: All right. Then that ends this. We will now get ready for the trial of the case.

MR. FRIEDBERG: Your Honor, may I ask one more question?

THE COURT: Well go ahead.

BY MR. FRIEDBERG:

Q. Did you know there was cocaine in that room?

A. I knew there was cocaine in the room.

Q. You didn't know exactly—

A. I didn't know how much cocaine was in the room.

MR. FRIEDBERG: I think what she is saying, she didn't know that it was exactly a pound, Your Honor.

The District Court properly concluded from this and other testimony that appellant did in fact know that there was cocaine in the room but was unsure of the exact amount. At the post-conviction hearing on her motion for a new trial appellant testified that she only had knowledge of a small amount of cocaine, less than one gram, which she alleged was on a table in the room when the police entered. Read in the light of the whole record we find this after-the-fact assertion to be peculiarly unconvincing, and the District Court did not err in rejecting it.[3] We likewise hold on the whole record that the District Court correctly held that appellant made a knowing and intelligent waiver of her right to be represented separately and to present her independent defense. We are able to reach this conclusion because the experienced trial judge conducted a sufficient inquiry in advance of trial to assure that there was no possibility of conflict in the dual representation which appellant did not choose knowingly and intelligently to waive.

**3.** As was fully developed at the hearing on the post-conviction motions the stipulation referred to cocaine located in a flight bag. When examined by the District Court about the stipulation during the trial appellant had simply contended that she did not know how much cocaine was in the room. She did not at that time contend that she had no knowledge of the cocaine in the flight bag. The post-trial explanation of appellant is entitled to little weight, and the District Court properly rejected it.

## II.

It has become increasingly apparent that dual representation is fraught with risk of conflict and should be approached with caution by the parties and by counsel. Recognizing this, we have said in this Circuit that responsibility for avoiding such risks lies heavily both with the trial court, see *United States v. Williams,* 429 F.2d 158, 161 (8th Cir.), *cert. denied,* 400 U.S. 947, 91 S.Ct. 255, 27 L.Ed.2d 253 (1970), and with counsel, *United States v. Valenzuela,* 521 F.2d 414, 416 n.1 (8th Cir. 1975), *cert. denied,* 424 U.S. 916, 96 S.Ct. 1117, 47 L.Ed.2d 321 (1976).[4] In *Williams* we held that such an inquiry was required of the trial court in cases involving appointed counsel. For reasons that will appear below we think this rule applies equally to retained counsel. *Cf. United States v. Valenzuela, supra,* 521 F.2d at 416 (applying same standard of prejudice to retained counsel).

In *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942), a case in which the trial court had appointed the associate counsel of one defendant to be counsel for another, the Supreme Court stated:

> [T]he "Assistance of Counsel" guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer simultaneously represent conflicting interests.

The Sixth Amendment right to effective assistance of counsel contemplates the assistance of a counsel free from conflicts of interest, and able to render independent judgment on behalf of his client. *See, e. g., United States ex rel. Hart v. Davenport,* 478 F.2d 203 (3d Cir. 1973).

We have recognized in earlier decisions that dual representation of codefendants is not *per se* violative of the Sixth Amendment right. *See, e. g., United States v. Williams, supra,* 429 F.2d at 160. We have required a showing of an actual conflict of interest or evidence pointing to a substantial possibility of a conflict of interest before reversal is commanded on this ground alone. *United States v. Valenzuela, supra,* 521 F.2d at 416; *United States v. Irons,* 475 F.2d 40, 43 (8th Cir.), *cert. denied,* 412 U.S. 951, 93 S.Ct. 3020, 37 L.Ed.2d 1004 (1973); *United States v. Williams, supra,* 429 F.2d at 161.

On the other hand we have not hesitated to hold that a defendant was denied effective assistance of counsel when dual representation precluded him from asserting an independent defense. *See, e. g., Robinson v. Parratt,* 546 F.2d 764 (8th Cir. 1976), *aff'g* 421 F.Supp. 664 (D.Neb.1976). In that case the defenses of two jointly represented defendants had become antagonistic to each other because the alibi defense of one of them had fallen through and the dual representation precluded the other from asserting that the crime had been committed by his codefendant before he arrived on the scene. We rejected as inadequate the defense counsel's eleventh hour request for severance as a satisfactory alternative. In another case, we upheld a conviction on the basis that a waiver had occurred, but we criticized the joint representation of two accountants in an income tax case in which one defendant testified that the negligence of his codefendant was part of the reason he failed to file his return. *United States v. Swanson,* 509 F.2d 1205, 1210 n.7 (8th Cir. 1975).

Indeed, the Minnesota Supreme Court has recently identified a number of significant areas in which dual representation has presented additional burdens to the defense: "the possibility of inconsistent pleas, factually inconsistent alibis, conflicts in testimony, differences in degree of involvement in the crime, tactical admission of evidence, the calling and cross-examination and impeachment of witnesses, [and] strategy in final summation." *State v. Olsen,* 258 N.W.2d 898, at 905 (Minn.Sup.Ct. Oct. 7, 1977) (footnotes omitted). While the potential for prejudice is not so inherent as to require a *per se* rule of conflict, it is nonetheless sufficiently pervasive that only a minimal showing of conflict should be re-

---

4. *See also* ABA Standards Relating to the Defense Function § 3.5 (Approved Draft 1970).

quired to invoke constitutional protection.[5] Thus, in most cases the question will not be so much whether a conflict existed, but whether the defendant effectively *waived* it.

The Circuits are divided on whether the trial judge has a duty to inquire into conflicts or whether that responsibility may properly be left with defense counsel. The Seventh Circuit has held that the trial judge need only "be watchful for indicia of conflict during trial," *United States v. Mandell,* 525 F.2d 671, 677 (7th Cir. 1975), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 774, 46 L.Ed.2d 637 (1976) (holding that primary responsibility rests with "members of the bar"). The Fifth Circuit has rejected a *per se* test and held that "a trial court does not need to advise a defendant of the right to separate counsel in the event of a conflict of interest between codefendants, where there was neither objection, claim, nor notice to the court of any alleged conflict between the interests of the defendants." *United States v. Boudreaux,* 502 F.2d 557, 558 (5th Cir. 1974). *See also United States v. Smith,* 550 F.2d 277, 286 (5th Cir. 1977).

In *United States v. LaRiche,* 549 F.2d 1088 (6th Cir.), *cert. denied,* 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 383 (1977), the Court held that a defendant must show an actual conflict of interest in order to prevail on a claim of ineffective assistance of counsel, but the facts of the case involved a hearing held by the trial judge in which the possible conflict of interest was discussed with the jointly represented defendant. *See id.* at 1095. In addition, the Ninth Circuit has said in *United States v. Christopher,* 488 F.2d 849, 851 (9th Cir. 1973), that the "failure of a trial court to advise co-defendants that they have the right to separate coun-

sel, absent a showing in the record of conflicting interests, is not reversible error."[6]

The Second Circuit has held that a trial judge should make a careful inquiry before *appointing* one attorney to represent two or more defendants. *Morgan v. United States,* 396 F.2d 110 (2d Cir. 1968). In *United States v. Alberti,* 470 F.2d 878, 881–82 (2d Cir. 1972), *cert. denied,* 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973) the Court stated that whenever a potential conflict becomes apparent regarding retained counsel the trial judge,

> should conduct a hearing to determine whether there exists a conflict of interest with regard to defendant's counsel such that the defendant will be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the sixth amendment. In addition, the trial judge should see that the defendant is fully advised of the facts underlying the potential conflict and is given a chance to express his or her views.

This rule has been upheld in later decisions although in none of them has the Court been willing to hold that this duty is automatic; rather it is triggered "when a potential conflict of interest arises." *See Abraham v. United States,* 549 F.2d 236, 239 (2d Cir. 1977); *United States v. Carrigan,* 543 F.2d 1053, 1055 (2d Cir. 1976).

The Third Circuit appears to have established an even more expansive role for trial court judges. The Court has held that "upon a showing of a possible conflict of interest or prejudice, however, remote, we will regard joint representation as constitutionally defective." *United States ex rel. Hart v. Davenport, supra,* 478 F.2d at 210.

---

**5.** Since what is at stake here is a constitutional right, it would seem that denial of such protections can be considered harmless error only if it can be said to be harmless beyond reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Lollar v. United States,* 126 U.S.App.D.C. 200, 204, 376 F.2d 243, 247 (1967).

**6.** Our research has not disclosed a case in which the Tenth Circuit has faced the issue of what inquiry must be made by the trial judge

when confronted by codefendants represented by the same counsel. It has, however, held that it is not inherent error to *appoint* the same counsel to represent codefendants in the absence of actual prejudice. *See United States v. Smith,* 464 F.2d 194 (10th Cir.), *cert. denied,* 409 U.S. 1066, 93 S.Ct. 566, 34 L.Ed.2d 519 (1972); *Fryar v. United States,* 404 F.2d 1071 (10th Cir. 1968), *cert. denied,* 395 U.S. 964, 89 S.Ct. 2109, 2110, 23 L.Ed.2d 751 (1969).

Although unwilling to adopt a *per se* reversal rule, the Court stated that the trial judge should warn defendants of the dangers inherent in joint representation "at the earliest stage of the criminal justice process." *Id.* at 211.

Two circuits have announced an affirmative duty of inquiry by trial judges. The District of Columbia has held that "[w]hen two or more defendants are represented by a single counsel, the District Court has a duty to ascertain whether each defendant has an awareness of the potential risks of that course and nevertheless has knowingly chosen it." *Campbell v. United States,* 122 U.S.App.D.C. 143, 144, 352 F.2d 359, 360 (1965). The Court said this is not a rule requiring separate representation in all cases, but rather one which requires the trial judge to insure that the decision to proceed with one attorney is an "informed decision." If the trial judge does not do this, reversal is required.

A rule somewhat less inflexible but more definitive in its scope has been announced in the First Circuit, where trial judges are required to comment to defendants on the risks of joint representation and to inquire whether they have discussed these risks with their attorney and whether or not they understand their right to a separate attorney. *United States v. Foster,* 469 F.2d 1, 5 (1st Cir. 1972). The exact timing of the inquiry, however, is left to the trial judge's discretion. Once this is done, and if the inquiry appears on the record, the defendant bears a heavy burden to show that his trial was unfair. If inquiry is not made, or if it does not appear on the record, the government bears the burden to show that

the existence of prejudice was improbable, if the matter is on direct appeal, or was unlikely by a preponderance of the evidence, if the conviction is under collateral attack.

The Fourth Circuit also appears to require an inquiry by the trial judge whenever two defendants are represented by the same attorney.

> [W]hile representation of codefendants by the same attorney is not in itself tantamount to the denial of effective assistance of counsel, "[t]he very fact that two or more co-defendants are represented by the same counsel should alert a trial judge and cause him to inquire whether the defenses to be presented in any way conflict."

*United States v. Truglio,* 493 F.2d 574, 579 (4th Cir. 1974) (finding that conflict of interest denied effective assistance of counsel), *citing United States v. Lovano,* 420 F.2d 769, 772 (2d Cir. 1970).[7]

■ The decisions of the Eighth Circuit to date (1) do not impose an automatic duty of inquiry upon the district court[8], (2) reject a *per se* rule of conflict, requiring that at least the substantial likelihood of prejudice be shown[9], but (3) express concern that defendants may be placed in such a conflict at some time during trial, thereby placing in jeopardy the fairness of the trial.[10] Courts that do not apply a *per se* rule of conflict (and we do not) nonetheless have urged trial judges to be alert and sensitive to the likelihood of conflict that dual representation presents. If the court has not conducted a meaningful inquiry at an early stage, it is doubtful that the prejudicial effects of a conflict can be avoided.[11]

---

7. *See also* ABA Standards Relating to the Function of the Trial Judge § 3.4(b) (Approved Draft 1972) (requiring automatic inquiry by the trial judge).

8. *See, e. g., United States v. Valenzuela,* 521 F.2d 414 (8th Cir. 1975), *cert. denied,* 424 U.S. 916, 96 S.Ct. 1117, 47 L.Ed.2d 321 (1976).

9. *See, e. g., United States v. Valenzuela, supra; United States v. Williams,* 429 F.2d 158 (8th Cir.), *cert. denied,* 400 U.S. 947, 91 S.Ct. 255, 27 L.Ed.2d 253 (1970).

10. *See, e. g., United States v. Swanson,* 509 F.2d 1205, 1210 n.7 (8th Cir. 1975).

11. Such an inquiry should come as early in the criminal process as possible. *See United States ex rel. Hart v. Davenport,* 478 F.2d 203, 211 (3d Cir. 1973). If the proceedings are allowed to go forward before it is determined that counsel has a conflict of interest, it may be necessary to disqualify counsel from representing either defendant, as was done by Judge Lacey in *United States v. Garafola,* 428 F.Supp. 620, 623 (D.N.J.1977).

## III.

Requiring a meaningful inquiry by the trial court serves both the defendant and the prosecution because it offers a greater likelihood that possible conflicts of interest can be identified and explored with the defendant so that other legal representation can be provided before prejudicial error has occurred, or, in the alternative, the record of such inquiry will show that, notwithstanding such potential conflict of interest, the defendant made a knowing and intelligent waiver of his right to separate counsel and, for reasons sufficient to the defendant, elected to go to trial with dual representation.

In this Circuit we recognize that the Sixth Amendment right to effective assistance of counsel may be waived if such a waiver is knowing and intelligent. *See United States v. Swanson, supra,* 509 F.2d at 1210 n.7; *Larry Buffalo Chief v. South Dakota,* 425 F.2d 271, 280 (8th Cir. 1970). *See also United States v. Gaines,* 529 F.2d 1038, 1044 (7th Cir. 1976); *United States ex rel. Hart v. Davenport, supra,* 478 F.2d at 210. *Cf. Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (accused has right to waive the assistance of counsel and to appear *pro se* ). In *Larry Buffalo Chief* we said, "[W]here a possible conflict of interest is pointed out to an accused and the accused then makes an intelligent and intentional waiver, he cannot later complain." 425 F.2d at 280. Because the conflicts are often subtle it is not enough to rely upon counsel, who may not be totally disinterested, to make sure that each of his joint clients has made an effective waiver. The Fifth Circuit, which also does not have a *per se* rule, *see United States v. Smith, supra,* 550 F.2d at 286, has nonetheless spelled out in significant detail what must be done to assure an adequate waiver.

> [The] district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections. . . It is, of course, vital that the waiver be established by "clear, unequivocal, and unambiguous language." . . . Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection. Recordation of the waiver colloquy between defendant and judge will also serve the government's interest by assisting in shielding any potential conviction from collateral attack, either on Sixth Amendment grounds or on a Fifth or Fourteenth Amendment "fundamental fairness" basis.

*United States v. Garcia,* 517 F.2d 272, 278 (5th Cir. 1975).

The Minnesota Supreme Court has recently adopted the following formulation:

> The defendant must voluntarily and with full knowledge of the consequences decide on dual representation. The court should address each defendant personally and advise him of the potential danger of dual representation. The defendant should have an opportunity and be at liberty to question the trial court on the nature and consequences of dual representation and the entire procedure should be placed on the record for review. When satisfactory inquiry does not appear on the record, the burden shifts to the state to demonstrate beyond a reasonable doubt that a prejudicial conflict of interests did not exist.

*State v. Olsen, supra,* at 907. (footnotes omitted).

■ In view of our holding in *United States v. Valenzuela, supra,* a presumption

of prejudice does not arise if the inquiry is not made, nor can we at this time adopt a burden-shifting procedure such as that announced in *State v. Olsen, supra,* although there is much to commend it. We do, however, state that it is the duty of the trial court to make an inquiry similar to that required in *State v. Olsen, supra,* and we anticipate that without such an inquiry a finding of knowing and intelligent waiver will seldom, if ever, be sustained by this Court. *Cf. Austin v. Erickson,* 477 F.2d 620 (8th Cir. 1973) (the government did not meet its burden by showing waiver of right to appointed counsel free from conflict of interest).[12] Considering the minimal showing needed to establish the substantial possibility of a conflict of interest, the importance of an adequate record to underpin a finding of waiver cannot be overstated. The administration of justice is best served by such an inquiry and we now require it.

■ The record reveals that such an inquiry was made by the District Court in this case. Prior to accepting the stipulation of facts, an on-the-record inquiry took place regarding the conflict of interest problem in which Lawriw, Noto, Judge Lord, and appellant's trial counsel took part. Our review of that inquiry convinces us that appellant's claim that her waiver was not given voluntarily or intelligently is without merit.

The inquiry covered both the appellant's right to separate, independent counsel and the particular way in which defense conduct might differ if there were separate attorneys. In addition, there is the statement of appellant's trial counsel to Judge Lord, which he repeated in his testimony at the hearing on the motion for a new trial, that he spoke with both Noto and Lawriw regarding the strength of their respective cases and defenses. There was substantial basis for the District Court to find the contention of appellant, that she did not understand the significance of her decision to proceed with one attorney, to be incredible. We agree with the District Court that she knowingly and intelligently waived her Sixth Amendment right to counsel unimpaired by conflict of interest, even if a conflict did in fact exist in this case.[13]

12. The issue of whether there has been an effective waiver is one requiring much sensitivity on the part of the trial court. It has been noted that in the proper case the trial judge may refuse to give effect to a professed desire to go forward with joint representation and may order separate counsel for codefendants. *See, e. g., Abraham v. United States,* 549 F.2d 236, 239 (2d Cir. 1977); *United States v. Garafola, supra.* One basis for this would be a finding that the attempted waiver was not knowing and intelligent. *See United States v. Garafola, supra.* In *United States v. Carrigan,* 543 F.2d 1053, 1057–58 (2d Cir. 1976) (Lumbard, J., concurring), Judge Lumbard expressed the view that it is a rare defendant who can intelligently determine that his interests will be properly served by counsel who is also representing another defendant, and even *defense* counsel may not be fully informed by his clients of all the facts necessary to make a determination.

It follows that there will be cases where the court should require separate counsel to represent certain defendants despite the expressed wishes of such defendants. . . . The right to effective representation by counsel whose loyalty is undivided is so paramount in the proper administration of criminal justice that it must in some cases take precedence over all other considerations, including the expressed preference of the defendants concerned and their attorney. *Id.* at 1058. *See also United States v. Bernstein,* 533 F.2d 775, 787–89 (2d Cir. 1976).

13. Appellant's final contention is that the District Court erred in not treating the trial on stipulated facts as a guilty plea and complying with the requirements of Fed.R.Crim.P. 11. This contention, however, fails to note the difference between a stipulation of facts, even one tending to establish the stipulating party's guilt, and a plea of guilty or nolo contendere. *See United States v. Terrack,* 515 F.2d 558, 560 (9th Cir. 1975); *United States v. Brown,* 138 U.S.App.D.C. 398, 428 F.2d 1100, 1103 (1970).

An inquiry as thorough as that prescribed by Fed.R.Crim.P. 11 is not required before the district court accepts a stipulation of facts establishing guilt from a criminal defendant. In this case, the government's attorney and the trial judge sufficiently addressed Lawriw, as well as codefendant Noto in the presence of Lawriw, as to the rights that she surrendered as a result of signing the stipulation.