**UNITED STATES of America, Plaintiff,**

v.

**Joseph Vincent AGOSTO, Deil Otto Gustafson, Roger Frank Newstrum, Ralph Edwin Bruins, James Louis Bacigalupo, and Joan Lorrain Norris, Defendants.**

No. Cr. 3–81–96.

United States District Court,
D. Minnesota,
Third Division.

Dec. 29, 1981.

James M. Rosenbaum, U. S. Atty., Douglas A. Kelley, Thorwald H. Anderson, Asst. U. S. Attys., Minneapolis, Minn., for plaintiff.

Stanley I. Greenberg, Los Angeles, Cal., Peter J. Thompson, Minneapolis, Minn., for defendant Agosto.

Joe A. Walters, O'Connor & Hannan, Minneapolis, Minn., for defendant Gustafson.

Gordon G. Busdicker and Jerry W. Snider, Faegre & Benson, Minneapolis, Minn., for defendant Newstrum.

Joseph S. Friedberg and Mark W. Peterson, Minneapolis, Minn., for defendant Bruins.

Steven Z. Kaplan and James W. Littlefield, Briggs & Morgan, St. Paul, Minn., for defendant Bacigalupo.

Stephen Stein, Goodman, Oshins, Brown & Singer, Las Vegas, Nev., and Douglas W. Thomson, St. Paul, Minn., for defendant Norris.

## MEMORANDUM

## FINDINGS OF FACT

## CONCLUSIONS OF LAW

## ORDER

DEVITT, Senior District Judge.

In this recently filed criminal prosecution against six defendants alleging a total of

113 counts of conspiracy, misapplication of bank funds and mail and wire fraud, the government has moved, pursuant to Rule 44(c), Fed.R.Crim.P., for a hearing to determine whether counsel for four of the defendants have an actual or potential conflict of interest and, if so, to order appropriate relief. The government urges that Joe A. Walters, Stephen Stein, Stanley I. Greenberg and Steven Z. Kaplan be disqualified.

The present legal representation of each defendant is as shown in the listed appearance above. The government claims, and defendants do not deny, that each of the following named attorneys now or previously represented in this case the defendants and witnesses named below and that each of the witnesses appeared before the Grand Jury and that each will be called by the government at trial:

| Attorneys | Clients |
|---|---|
| 1. Joe A. Walters | Defendants: Gustafson<br>Newstrum<br>Bruins<br>Philip Williams, accountant for Gustafson Corporations.<br>Robert Hildreth, accountant for Gustafson Corp. at Tropicana.<br>Dwain Johnson, C.P.A. who prepared Gustafson's tax return.<br>Jane McClean, employee of Gustafson who handled checks.<br>Helen Sundberg, Gustafson's personal secretary.<br>Gary Talbot, bookkeeper for Gustafson. |
| 2. Stephen Stein | Defendants: Norris<br>Agosto<br>Michael Tanno, General Manager of Tropicana.<br>Albert Bardier, accountant for Production and Leasing, Ltd., owned by Agosto.<br>Mitzi Briggs Smith, one time 80% owner of the Tropicana.<br>Harold Hug, comptroller of the Tropicana.<br>Jay Brown, law partner of Stein. |
| 3. Stanley I. Greenberg | Defendants: Agosto<br>Norris<br>Albert Bardier, accountant for Production and Leasing, Ltd. owned by Agosto. |
| 4. Steven Z. Kaplan | Defendant: Bacigalupo<br>Victoria Peterson, Summit Bank bookkeeping supervisor.<br>Ula Hall, Summit Bank auditor<br>Barbara Morrow, Summit Bank vice president. |

Rule 44(c) became effective on December 1, 1980, and established a procedure for avoiding the occurrence of events which might otherwise give rise to a plausible post-conviction claim that because of multiple representation the defendants in a criminal case were deprived of their sixth amendment right to the effective assistance of counsel. The new rule requires the court to take "such measures as may be appropriate to protect" a defendant's sixth amendment right to counsel "unless it appears that there is good cause to believe no conflict of interest is likely to arise."

■ In addition to the authority granted by this rule, the district courts are responsible for the supervision of members of their bars. *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602, 605 (8th Cir. 1977), *cert. denied*, 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978); *Central Milk Producers Co-op v. Sentry Food Stores*, 573 F.2d 988, 992 (8th Cir. 1978). The district courts are authorized to disqualify attorneys from representing defendants in criminal cases where such representation would violate the Code of Professional Responsibility. *Coffelt v. Shell*, 577 F.2d 30 (8th Cir. 1978). The district courts are encouraged "to strictly enforce the Code of Professional Responsibility." *Central Milk Producers Co-op v. Sentry Food Stores*, 573 F.2d at 993.

The issue here is whether the multiple representations attempted by Joe A. Walters, Stephen Stein, Stanley I. Greenberg and Steven Z. Kaplan occasion a conflict of interest, or likely future conflict of interest, which will deprive any of the defendants of effective assistance of counsel under the sixth amendment, or whether disqualification is required because of violations of the Code of Professional Responsibility. The court held hearings on November 25 and December 16, 1981 and personally advised each defendant as to his right to effective assistance of counsel. Statements and briefs were filed. Counsel were heard and each submitted proposed findings.

## JOE A. WALTERS—DEIL GUSTAFSON

Attorney Walters currently represents defendant Deil Gustafson. Gustafson, through various holding companies, formerly owned a substantial interest in the Tropicana Hotel and Country Club (Tropicana). He also owns the Summit National Bank of St. Paul and the Summit National Bank of Richfield. At various times, he has served as president of the St. Paul bank, and chairman of the board of both banks.

During the grand jury investigation and until after the arraignment in this case, Walters also represented defendant Roger Newstrum, an officer and employee of various Gustafson-owned companies, and at various times, a corporate officer of the Tropicana and vice president and director of the Richfield bank. Until the indictment, Walters also represented defendant Ralph Bruins, who was president and a director of the Richfield bank and a consultant to the St. Paul bank.

In addition to these three defendants, during the grand jury investigation, Walters represented six other Gustafson employees who were either called as witnesses by the grand jury or interviewed by the Federal Bureau of Investigation (FBI). The government has stated these witnesses will be called by the government during trial, and that their testimony will establish the link between defendants Gustafson and Agosto in diverting moneys from the Summit Banks to the Tropicana by the scheme charged in the indictment. The legal fees of all the aforementioned defendants and witnesses represented by Walters are being paid by the Summit Banks.

Gustafson has submitted two affidavits to this court in connection with this motion, and was sworn and testified at the hearing of December 16, 1981. He has expressly declined to attempt to waive his sixth amendment right to effective assistance of counsel.

He states that, based upon his own knowledge and discussions with his attorney, he believes there are no current conflicts arising out of Walter's prior representation of his codefendants and the government witnesses. Specifically, Gustafson takes the position that there is no inconsistency between his defense and that of his codefendants.

The government contends, however, that there is a strong likelihood of inconsistency in the defenses of these individuals. According to the government, Gustafson has asserted through counsel that he was unaware that the relevant checking accounts of the Tropicana were at his banks. The government believes it can prove that Bruins and Newstrum were involved in the allegedly unlawful transactions that are the subject of the indictment. This, the government contends, clearly establishes the inconsistency between the positions that the defendants will likely take at trial. Gustafson suggests, as an alternative to disqualification of Walters, that in the event conflicts arise, he will retain additional counsel to conduct cross-examination of the former clients of Walters.

In connection with Mr. Walters' representation of the codefendants, both Bruins and Newstrum have refused to permit disclosure by Walters of any confidences and secrets reposed in him during his representation of them. They have expressly declined to waive any conflicts arising out of his past representation. The other six witnesses have submitted affidavits stating that they revealed no confidences to Walters during his representation of them. Three of those witnesses, Talbot, Williams and Johnson, assert that they were only called before the grand jury to produce documents. The other three witnesses, Hildreth, Lundberg, and McLean were apparently called before the grand jury to testify as to substantive matters. None of the affidavits purport to waive the attorney-client privilege between the witnesses and Walters.

## STEPHEN STEIN—JOAN NORRIS

Attorney Stein currently represents defendant Joan Norris. He has previously represented her on unrelated matters. Additionally, he represented her during proceedings before a Las Vegas grand jury,

during which Norris was subpoenaed to produce certain documents of defendant Agosto's corporations, including Production & Leasing, Ltd. (P & L), which produced and provided the Follies Bergere floor show for the Tropicana. The indictment alleges that P & L wrote hundreds of thousands of dollars worth of NSF checks on accounts at the Summit Banks.

Norris is an employee of defendant Agosto, who owns a controlling interest in P & L. She has been employed by Agosto since she first moved to Las Vegas in 1976. By her own testimony, she is employed as an executive secretary to Agosto; the indictment also alleges that she is an officer of various corporations owned by Agosto.

Stein represented defendant Agosto in this matter at various times preceding the indictment. He has also represented him in other matters over the last six years, including proceedings before the Nevada Gaming Commission and the United States Immigration & Naturalization Service. Agosto is also represented by one of Stein's law partners, Jay Brown.

Stein also represented several other witnesses before the grand jury. The government intends to call these persons as witnesses at the trial.

Stein represented witness Nicholas Tanno when he appeared before the grand jury. Tanno was the general manager of the Tropicana during relevant times covered by the indictment. Stein arranged for immunity for Tanno in connection with his appearance before the grand jury. In addition, Stein and Tanno have been social friends for five years. Tanno has submitted an affidavit in connection with this motion that states that no confidences were ever reposed in Stein in connection with his representation. The affidavit purports to waive any attorney-client privilege Tanno may have and states that there are no conflicts that could arise between Stein's current representation of Norris and his past representation of Tanno.

Stein also represented Harold Hug in connection with an effort by Hug to obtain immunity before an appearance before the grand jury. Hug was the comptroller of the Tropicana during times relevant to the indictment. According to a statement given by Norris to the FBI, Hug gave approval when Norris cashed large checks drawn on P & L accounts at the Tropicana casino cage, some of which created overdrafts on the P & L accounts. At the time Hug endeavored to discuss immunity with the United States Attorney's office, Stein was discharged from his representation of Hug because of the government's unwillingness to have Stein present during discussions. This unwillingness was due to Stein's then current representation of target Agosto.

Another grand jury witness represented by Stein is his law partner, Jay Brown. Brown apparently has represented or does represent Agosto on other matters. Brown submitted an affidavit in connection with this motion that asserts that no confidences were ever reposed by Brown in Stein during the course of the representation.

Stein also represented grand jury witness Mitzi Briggs Smith, a former co-owner, with defendant Gustafson of the Tropicana. Stein also represented the Tropicana during Smith's ownership. In connection with her appearance before the grand jury, Stein arranged a grant of immunity for Smith. Smith's affidavit submitted in connection with this motion asserts that Smith reposed no confidences in Stein and purports to waive her attorney-client privilege.

Stein also represented grand jury witness Albert Bardier, P & L's public accountant. According to the government, Bardier reconciled the bank statements from the Summit Banks. Stein also represented Bardier before a Las Vegas grand jury investigating Agosto's business concerns. Bardier's affidavit, submitted in connection with this motion, states that he has worked closely with Stein, representing both individuals involved in these proceedings and other mutual clients. Additionally, Stein and Bardier are social friends. Bardier states by his affidavit that he reposed no confidences in Stein and purports to waive his attorney-client privilege.

In a letter to the court dated December 8, 1981, and in her testimony on December 16, 1981, Norris represented to the court that she has reviewed all the foregoing affidavits and that Stein has advised her that no confidences were communicated to him by these individuals. With regard to codefendant Agosto, Norris represents that she understands the potential for conflict but believes that no confidences were ever reposed in Stein by Agosto. She then purports to waive any conflicts with the following language: "I am willing to waive any prejudice which may come to me from any possible conflict which could arise in the furture [sic] during these proceeding [sic], although I do not believe such will occur." Letter of Joan Norris, December 8, 1981.

In considering the actual or potential conflicts in Stein's representation of both Norris and Agosto, it is important to note that in a statement given to the FBI, Norris essentially stated that she acted at the direction of Agosto in relation to the allegedly unlawful transactions enumerated in the indictment. She denies any knowledge of wrongdoing and portrays Agosto as the only individual with the authority to authorize payment of bills and expenses. She stated that she could not write a check on P & L accounts without the prior approval of Agosto.

Arrangements are currently being made to obtain payment of Norris' legal fees by P & L. At the time she retained local counsel in Minnesota, Agosto advanced her the moneys for the retainer. It is unclear whether that money will be considered a personal loan to Norris or whether the corporation will reimburse Agosto.

## STANLEY I. GREENBERG—JOSEPH AGOSTO

Attorney Greenberg currently represents defendant Agosto in these proceedings. He has represented Agosto in other matters, and also represented him in the preindictment stages of these proceedings.

In addition to his representation of Agosto, Greenberg represented defendant Norris in connection with her appearances before both the Las Vegas and Minnesota grand juries investigating Agosto. In addition, Greenberg represented grand jury witness Bardier in connection with his appearance before the Las Vegas grand jury.

Greenberg asserts that he and Stein discussed with defendants Norris and Agosto the representation of both of these defendants by the two attorneys. Greenberg represents that he and Stein discussed potential conflicts with Agosto and Norris and that these discussions were held "out of an abundance of caution ...." Statement of Stanley I. Greenberg at 6. Greenberg states that the interests of Norris and Agosto are identical, that there is "no possibility that conflicting defenses will be presented ...", and that neither Norris nor Agosto will plead guilty. *Id.*

In connection with this motion as it relates to Greenberg, Norris submits an unsworn statement in which she states she has reposed no confidences in Greenberg because she told the FBI essentially the same things she confided to Greenberg. She also states that, with regard to any confidential communication between herself and Greenberg, she waives her attorney-client privilege.

Greenberg has also submitted an unsworn statement by Bardier, P & L's certified public accountant. It recites that Bardier was represented by Greenberg in connection with his production of documents before the Las Vegas grand jury, that he had no confidential communications with Greenberg, and that he waives his attorney-client privilege with regard to Greenberg's representation.

Agosto submitted an unsworn statement in connection with this motion and was sworn and testified at the hearing on December 16, 1981. In Agosto's statement, he recites that he understands that Norris could refuse to answer questions at trial put to her by Greenberg because of his past representation of her. He states that he does not view this as a problem because of the identity of his and Norris' interests. He also states that he believes that he and Norris do not have inconsistent defenses

and that neither he nor Norris intend to plead guilty. With regard to witness Bardier, Agosto states that Bardier had no confidential communications with Greenberg, and in any event that he waives any rights he may have in this regard.

At the December 16 hearing, Agosto testified that he understood the pitfalls inherent in Greenberg's continued representation of him and wished to proceed in any event. He did not specify precisely what he understood those pitfalls to be.

## STEVEN KAPLAN—JAMES BACIGALUPO

Attorney Kaplan has represented defendant Bacigalupo both in the pre- and post-indictment stages of these proceedings. Bacigalupo was the vice president and cashier of the St. Paul bank.

Unlike the other attorneys who are the subject of this motion, Kaplan has never represented any of his client's codefendants in this matter. During the grand jury investigation, he did, however, represent three bank employee witnesses in connection with their appearances. These employees will be called as government witnesses.

Of the three witnesses previously represented by Kaplan, the parties seem to agree that only the representation of Victoria Peterson presents any potential problem. Peterson was the bookkeeping supervisor at Summit National Bank during relevant times covered by the indictment. The government asserts that Peterson testified before the grand jury and informed the FBI that she had told Bacigalupo several years ago that the activity involving the P & L accounts amounted to a "check-kiting" scheme.

Bacigalupo has submitted statements from all three witnesses, including Peterson, which recite that any confidences reposed in lawyers from Kaplan's law firm were also communicated to the United States Attorney's office, the grand jury or the FBI. The statements also consent to disclosure of any confidences in connection with these proceedings.

Bacigalupo, by affidavits and testimony at the December 16 hearing, stated that he has reviewed all of Kaplan's law firm's notes and memoranda which are products of the representation of the three bank employee witnesses. He has stated that he believes there is nothing in those records to indicate his attorney will encounter any conflicts in his representation of Bacigalupo.

Bacigalupo's affidavit states his understanding of conflict of interest, the possible problems that could arise in Kaplan's representation, and his understanding of his sixth amendment right to effective assistance of counsel. He states that, notwithstanding any future conflict arising with these witnesses, he wishes to continue with present counsel. In his testimony, Bacigalupo indicated that he is aware of the substance of the testimony witness Peterson will give.

## SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

Defendants Norris, Agosto and Bacigalupo have expressed a desire to waive their respective sixth amendment rights to effective assistance of counsel insofar as continued representation by their present attorneys impinges on those rights. Defendant Gustafson does not attempt to waive his sixth amendment right.

 The sixth amendment guarantees a defendant assistance of counsel which is "untrammeled and unimpaired ...." *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942). This contemplates "the assistance of counsel free from conflicts of interest and able to render independent judgment on behalf of his client." *United States v. Lawriw,* 568 F.2d 98, 101 (8th Cir. 1977), *cert. denied,* 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978) (citation omitted).

In our circuit, dual representation of codefendants is not a *per se* violation of the sixth amendment. *See, e.g., id.; United States v. Williams,* 429 F.2d 158, 160 (8th Cir.), *cert. denied,* 400 U.S. 947, 91 S.Ct. 255, 27 L.Ed.2d 253 (1970). A showing is required of an actual conflict of interest or

"evidence pointing to a substantial possibility of a conflict of interest . . . ."[1] *United States v. Lawriw*, 568 F.2d at 101. This standard takes into account the possibility of the manifestation of conflicts during trial, *id.* at 103, and it is recognized that the potential for prejudice in dual representation cases is "sufficiently pervasive that only a minimal showing of conflict should be required." *Id.* at 101–02.

The Eighth Circuit Court of Appeals requires that the trial court make a meaningful inquiry at an early stage of the proceedings in order to identify potential conflicts and explore them with the defendant, or alternatively, to record a knowing and intelligent waiver of the defendant's right to effective assistance of counsel. *See id.* at 104. In cases involving joint representation of codefendants, Fed.R.Crim.P. 44(c) requires:

> [T]he court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

A hearing has been held consistent with the requirements of *United States v. Lawriw* and Rule 44(c). With regard to each of the defendants involved, it is clear that there is a substantial possibility that conflicts of interest exist or will arise during the trial of this case.

Attorney Walters' representation of three of the principal defendants prior to the indictment presents major difficulties, not only with regard to cross-examination of the codefendants, but also with regard to planning trial strategy, arguing the relative culpability of the defendants to the jury, and the questioning of other witnesses regarding these defendants' participation in

the crimes charged. *See State v. Olsen*, 258 N.W.2d 898, 905 (Minn.1977). The prior representation of what may be key government witnesses presents potential additional problems.

The same is true with regard to attorneys Stein and Greenberg. Their representation of both Norris and Agosto raises the same conflicts. Nor does the fact that Stein, Greenberg, Norris and Agosto discussed these matters and concluded that there is no adversity in their interests, erase the existing conflicts. Norris' statement to the FBI reveals the possible inconsistencies in Norris' and Agosto's defenses that may arise. It may well be that representation of Norris by an attorney with no connections to Agosto would result in a defense by Norris inconsistent with that presented by Agosto, or a greater responsiveness to government overtures regarding plea bargaining or immunity. The attorneys appear to be attempting to guarantee this court that no conflicts will arise between Norris and Agosto that would affect their ability to fully represent Norris and Agosto. This is not only unrealistic, but also raises questions about whose interests are being given priority—the attorneys or the clients.

With regard to Stein's representation of Norris, his past representation of Agosto in this and other matters, his law firm's ties to Agosto, and his continuing social and business ties with the government witnesses he has represented, all indicate a strong potential for a conflict of interest. The sixth amendment guarantees a defendant an "attorney devoted solely to the interests of his client." *United States ex rel. Hart v. Davenport*, 478 F.2d 203, 209 (3d Cir. 1973). Under these circumstances, it is clearly foreseeable that Stein could not fill that role.

There is also a potential conflict in attorney Kaplan's prior representation of government witness Peterson, who will apparently offer damaging testimony against

---

1. The fact that counsel here are not seeking to currently represent more than one codefendant does not obviate the need for the Sixth Amendment inquiry necessary in this case. The dual representation of codefendants and witnesses during the preindictment stages of this matter clearly present potential hazards to the effective representation of the affected defendants.

defendant Bacigalupo. Kaplan could be precluded from attempting to impeach Peterson because of his attorney-client relationship with her which relates directly to her appearance in this matter.

■ The requisite showing of conflicts which impair the right to effective assistance of counsel has been made as to each defendant's attorney to which this motion is directed. Inquiry must then be made to determine whether there has been an adequate waiver of the sixth amendment right to counsel by these defendants.

Defendant Gustafson has expressly declined to waive his rights under the sixth amendment. Defendants Norris, Agosto and Bacigalupo, both through written statements submitted to the court and testimony at the December 16 hearing, have attempted to waive their right to effective assistance of counsel.

■ A defendant may waive any actual or potential conflict of interest which impairs his sixth amendment right to effective assistance of counsel, provided the waiver is made knowingly and intelligently. *Holloway v. Arkansas*, 435 U.S. 475, 483, n.5, 98 S.Ct. 1173, 1178, n.5, 55 L.Ed.2d 426 (1978); *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942); *United States v. Cox*, 580 F.2d 317, 320 (8th Cir. 1978), *cert. denied*, 439 U.S. 1075, 99 S.Ct. 851, 59 L.Ed.2d 43 (1979); *United States v. Lawriw*, 568 F.2d at 104.

■ Waiver is defined as "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). To be effective, the waiver of a constitutional right must be done with "sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970) (footnote omitted). The determination of whether an effective waiver of the right to effective assistance of counsel has been made depends on "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. at 464, 58 S.Ct. at 1023.

■ That a waiver be knowingly made with an appreciation of its "likely consequences," *Brady v. United States*, 397 U.S. at 748, 90 S.Ct. at 1468, requires that the actual or potential conflicts be capable of definition at the time the waiver is attempted. *See United States v. Dolan*, 570 F.2d 1177, 1181 (3d Cir. 1978); *United States v. Dickson*, 508 F.Supp. 732, 734 (S.D. N.Y.1981).

Application of these principles can result in disqualification of counsel in spite of a defendant's professed desire to proceed with particular counsel. *See United States v. Carrigan*, 543 F.2d 1053, 1058 (2d Cir. 1976) (Lumbard, J., concurring). *United States v. Lawriw*, 568 F.2d at 105, n.12 (citing *United States v. Garafola*, 428 F.Supp. 620 (D.N.J.1977), *aff'd sub nom. United States v. Dolan*, 570 F.2d 1177 (3d Cir. 1978)).

In this regard, the *Garafola* court discussed the practical difficulty often encountered by the trial court in attempting to advise defendants in the face of potential conflicts and ascertain whether a waiver has been effected:

> The average defendant cannot possibly understand fully and completely the extent to which his counsel's trial strategy may be affected by his representation of other defendants.
>
> ... [T]he trial judge cannot conduct a meaningful inquiry. He does not know the case. He cannot know the facts or the inferences which may be fairly drawn from them. He is unaware of the quality of the witnesses and the trial strategy the government and the defendants will pursue. Nor can he inquire into the defense without violating defendant's fifth and sixth amendment rights; and this is so whether the interrogation is held in open court or *in camera*. He is restricted to imparting vaguely contoured, abstract advice ....

428 F.Supp. at 623, 624.

Nor does the fact that counsel has discussed potential conflicts of interest with

their respective clients guarantee that a knowing and intelligent waiver has been made. In this instance, counsel have advised their clients that no conflicts exist or are likely to arise. Accordingly, the attempted waivers are premised on the defendant's belief that there will likely be no impairment of their rights to effective assistance of counsel. This cannot constitute a knowing and intelligent waiver as contemplated by *Johnson v. Zerbst* and *Brady v. United States*. *See In re Grand Jury Investigation*, 436 F.Supp. 818, 821 (W.D. Pa.1977), *aff'd by an evenly divided court*, 576 F.2d 1071 (3d Cir.) (en banc) (per curiam), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 343 (1978); *United States v. Garafola*, 428 F.Supp. at 624. Counsel is often in no better position to foresee potential conflicts which may arise at trial than is the court. *United States v. Carrigan*, 543 F.2d at 1058; *United States v. Garafola*, 428 F.Supp. at 625.

The instant case involves multiple defendants charged in numerous counts in an indictment detailing a sophisticated scheme involving the diversion of hundreds of thousands of dollars. With regard to defendants Norris and Agosto, their alleged involvement in the charged acts appears to be inextricably intertwined. Some of the government's key witnesses were represented by attorneys Stein and Greenberg during the pre-indictment proceedings in this case.

The court did its best to explain to these defendants the dangers of joint representation. This explanation was defective because the court was not in a position to adequately advise them of all of the foreseeable prejudices simply because the court does not know them all and, at this early stage of the proceedings, could not reasonably predict them so as intelligently to advise defendants. In my view, defendants Agosto and Norris did not, and at this early stage probably could not, knowingly waive their sixth amendment rights. The Eighth Circuit Court of Appeals has recently highlighted its "great concern that 'knowing waivers' of important constitutional rights are not to be lightly found." *United States v. Unger*, 665 F.2d 251, 256 (8th Cir. 1981).

These defendants did not show a comprehension of the complex, subtle and unforeseeable dangers inherent in the previous multiple representation by their attorneys. Each stated they wanted to waive their right to effective assistance of counsel. But their attempted waivers were a mere rote recitation of a desire to waive the conflict, and did not show a real understanding of the issues involved, the nature of the rights attempted to be waived, or the significance of the attempted waivers.

Norris did not truly waive any conflict of interest, but merely stated her view that no conflict existed, and that she had complete faith in her attorney whom she wanted to continue to represent her. Her attempted waiver was based on the mistaken belief that there were no confidential communications between Stein and his former clients and, if so, they were no longer protected because they had been made public.

Moreover, Norris' employer-employee relationship with Agosto requires a more exacting scrutiny of Norris' attempted waiver. Where such a relationship exists, an attempted waiver of the right to effective assistance of counsel is "likely a function in large part of one's natural hesitancy to alienate their employer rather than a product of a free and unrestrained will." *In re Grand Jury Investigation*, 436 F.Supp. at 821; *see United States v. Donahue*, 560 F.2d 1039, 1044 (1st Cir. 1977); *United States v. Garafola*, 428 F.Supp. at 623–24. Despite Norris' protestations to the contrary, this court is unconvinced that such is not the case here.

Because of the substantial possibility that the interests of Norris and Agosto will diverge later in these proceedings, and the difficulty presented in defining the effect this will have on Stein's ability to effectively represent Norris, I find that no effective waiver of the right to effective assistance of counsel has been made by Norris. Her attempted waiver is also rendered ineffective because of the problem of foreseeing the potential conflicts which have a substantial possibility of arising because of

Stein's past representation of key government witnesses, together with his continuing business and personal relationships with several of these witnesses.

Agosto gave voice to words of waiver, but he did not seem to have an understanding of the potential problems to be encountered by Greenberg's prior representation of codefendant Norris and witness Bardier. He testified that no conflict could arise because his position and that of Norris are the same. He stated that Greenberg's previous representation of Bardier created no problem because after talking to both Bardier and Greenberg, he understands there were no privileged communications between them.

The strong potential for conflicts arising out of Greenberg's representation of Agosto mandates the conclusion that no effective waiver has been made. The attempted waiver is premised on the belief that Norris will present a defense consistent with Agosto's. As with Norris, this does not evidence a waiver made with an appreciation of the "relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. at 748, 90 S.Ct. at 1468.

The conflict of interest problem as to defendant Bacigalupo and attorney Kaplan is the least egregious. Unlike the others, Kaplan has not represented other defendants in this case, and Fed.R.Crim.P. 44(c) is thus not directly applicable. The Code of Professional Responsibility is applicable, however, and the opinion of Michael Hoover, Director of the Minnesota Lawyers Professional Responsibility Board, correctly points out the conflict of interest occasioned by Kaplan's continued representation of Bacigalupo after having also represented three grand jury witnesses who are expected to testify in the case. Kaplan has stated to the court, however, that he is unaware of any limitation upon his ability to fully and effectively represent Bacigalupo and cross-examine these three witnesses. He will be held responsible for this representation.

*See United States v. Garafola*, 428 F.Supp. at 626.

■ The potential conflicts presented by Kaplan's prior representation of the grand jury witnesses are capable of definition, and have been identified. The conflict that could potentially adversely affect Bacigalupo's defense is the testimony of witness Peterson. Bacigalupo has exhibited an understanding of his right to effective assistance of counsel, the conflicts presented by Kaplan's representation, and has effected an intelligent and knowing waiver of his rights.

ETHICAL CONSIDERATIONS

■ Even if Norris and Agosto could, and had, effectively waived their sixth amendment rights, they could not thereby give sanction to their attorneys' violations of the Code of Professional Responsibility, particularly where, as here, it does not appear "that there is good cause to believe no conflict of interest is likely to arise." Fed. R.Crim.P. 44(c); *United States v. Dolan*, 570 F.2d at 1183; *United States v. Flanagan*, 527 F.Supp. 902 (E.D.Pa.1981).[2] Nor is Gustafson entitled to continued representation by Walters if that representation violates the attorney's ethical responsibilities. The polestar here is the admonition from the Evangelist Matthew that "no man can serve two masters." Our rules of court, judicial decisions, Code of Professional Responsibility and authoritative Standards of the American Bar Association recognize the wisdom, and effectuate the purpose, of the biblical injunction. And the reason for subscription to this principle is the evil of the alternative, that "you will love the one and hate the other; or hate the one and love the other."

And so here in a joint prosecution for fraud, it is almost inevitable that each defendant will claim innocence and point an accusing finger at the others. A lawyer having represented two such defendants in

---

**2.** Indeed, once a conflict of interest is found, and no effective waiver has been made, it is the attorney's duty to withdraw from representation. *United States v. Dolan*, 570 F.2d at 1182–83.

the case will find it impossible to independently and zealously represent the one, and at the same time keep the confidences and secrets of the other and all without giving the appearance of impropriety. *See* ABA Code of Professional Responsibility, Canons 4, 5, 7 and 9. A lawyer is prohibited from representing multiple clients having differing interests, as was done here, or where, as here, his independent professional judgment likely will be affected. ·*See* DR5–105(A) and (B).

The relevant principles applicable in this instance are found in Canons 4, 5 and 9 of the Code of Professional Responsibility. I conclude that these relevant portions of the Code mandate the disqualification of attorneys Walters, Stein and Greenberg.

█ Canon 4 provides, "A lawyer should preserve the confidences and secrets of a client." Disclosure of confidences and secrets may be revealed only as provided for in DR4–101(C). DR4–101(C)(1) applies in this instance, and permits disclosure only with full disclosure to and consent by the affected client. An examination of this record reveals, and the government aptly points out, that these attorneys take the position that *no* confidences were ever communicated to them by any of the individuals they previously represented. It is unnecessary to analyze these claims with regard to each individual represented by these attorneys; it is sufficient to note that the existence of an attorney-client relationship raises an "irrefutable presumption" that confidences were disclosed. *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602, 608 (8th Cir. 1977); *see United States v. Provenzano*, 620 F.2d 985, 1004–05 (3d Cir. 1980); *State of Arkansas v. Dean Food Products Co., Inc.*, 605 F.2d 380, 383–84 (8th Cir. 1979); Note, *Developments in the Law—Conflicts of Interest in the Legal Profession*, 94 Harv.L. Rev. 1247, 1329 (1981). Moreover, the protection of the confidential nature of the attorney-client relationship precludes this court from inquiring into whether confidences were imparted. *See Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d at 608.

The fact that confidences reposed in an attorney are disclosed in grand jury testimony or interviews with law enforcement personnel do not cause these communications to lose their protected status. The attorney in whom such confidences are reposed is still prohibited from disclosing such confidences except as provided in DR4–101(C) of the Code. *See* Note, *Developments in the Law, supra* at 1330.

The only inquiry then is whether there is a likelihood that confidences of former clients will be disclosed, and whether there has been a disclosure and consent sufficient to satisfy DR4–101(C)(1). Ethical Consideration 4–5 of the Code prohibits the use of a client's confidences to his disadvantage under any circumstances. *See United States v. FMC Corp.*, 495 F.Supp. 172 (E.D.Pa. 1980).

With regard to Walters' representation of Newstrum and Bruins, each of these defendants have expressly refused to permit the disclosure or use by Walters of any of the confidences reposed in him during that representation. Nor do the statements by any of the six government witnesses represented by Walters attempt to consent to any such disclosures.

Agosto and Norris also claim that no confidences were reposed in Stein and Greenberg during their prior representation of these defendants. Their attempted waivers of their privilege with regard to any confidences do not reflect a waiver based on full disclosure. Nor do the statements of the other government witnesses reflect consent after a full disclosure of their rights under the law and the Code of Professional Responsibility.

With regard to attorney Kaplan, he also takes the position that the witnesses he previously represented imparted no confidences in him. The only relevant confidences posing a potential problem pertain to witness Peterson's anticipated testimony regarding her statements to Bacigalupo that the P & L account activity amounted to a "check kiting" scheme. Because of the limited nature of the confidences disclosed to Kaplan in issue, he will be allowed to continue his representation of Bacigalupo.

Canon 9 of the Code of Professional Responsibility is closely linked with Canon 4. *State of Arkansas v. Dean Food Products Co., Inc.*, 605 F.2d at 385. Canon 9 provides, "A lawyer should avoid even the appearance of professional impropriety." Clients of lawyers are entitled to expect that confidential disclosures will be maintained in confidence. This expectation is given force through the merger of the concern for the appearance of impropriety in Canon 9 and the protections afforded by Canon 4. *Id.* at 386.

Canon 5 of the Code of Professional Responsibility is also relevant to this discussion. It provides, "A lawyer should exercise independent professional judgment on behalf of a client." DR5–105 specifically prohibits the acceptance or continuation of employment if the interests of another client may impair the independent professional judgment of the lawyer. A lawyer is required to decline or discontinue employment if it is likely to involve him in representing differing interests. DR5–105(A) and (B). It is questionable whether attorneys Walters, Stein and Greenberg should have commenced the multiple representation of these individuals in the first instance. The likelihood of differing interests between the targets of a grand jury investigation, and between employer targets and employee witnesses is obvious.

The injunction against a lawyer serving multiple clients is even more emphatically stated in the ABA Standard Relating to the Defense Function, § 3.5.

"... a lawyer should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation."

The record here persuasively shows that there are conflicts of interest present and the strong likelihood that additional conflicts will arise in the future, particularly during trial. Even if it were possible for defendants Gustafson, Agosto and Norris to waive the conflicts and their rights, they have not done so.

It is first the obligation of counsel to recognize their duty under the law and the Code of Professional Responsibility. The court, early on, urged counsel to seek the authoritative opinion of Director Michael Hoover of the Minnesota Lawyers Professional Responsibility Board but counsel for defendants Gustafson, Agosto and Norris chose not to do so. Absent self-disqualification, the court must act to insure fair trial and constitutional rights of litigants and to preserve the integrity of members of its bar.

Because it is presumed that confidences were disclosed relating directly to this matter, and that no effective consents to disclosure have been made, Canons 4, 5 and 9 require the disqualification of attorneys Walters, Stein and Greenberg.[3]

On the basis of the files and hearings held and the foregoing expressions, which are denominated findings of fact and conclusions of law, the court DISQUALIFIES Joe A. Walters, Stanley I. Greenberg and Stephen Stein from further representation of defendants Gustafson, Agosto and Norris in this action. Each of these defendants is directed to obtain and appear with qualified counsel before this court at 9:00 A.M. on January 11, 1982.

All other defendants and their counsel shall appear at the same time.

---

**3.** Gustafson's representation that he will retain additional counsel to participate in the trial with attorney Walters does not adequately protect Walters' former clients, nor does it rectify the appearance of impropriety existing because of Walters' prior representation of both code-fendants and government witnesses. Gustafson has not waived his right to effective assistance of counsel, and he cannot waive his code-fendants' attorney-client privilege. *See United States v. Siegner*, 498 F.Supp. 282 (E.D.Pa. 1980).